**EXHIBIT A**



DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

2019-739                                                         69 - 11

DARRELL GUILLORY

VERSUS

THE NATIONAL FOOTBALL LEAGUE, ROGER GOODELL, THE NFL REFEREES

ASSOCIATION, BILL VINOVICH, GARY CAVALETTO, TODD PRUKOP, PHIL

MCKINNELY, LOUISIANA STADIUM AND EXPOSITION DISTRICT

FILED: _____

_____ **DEPUTY CLERK**

### CLASS ACTION PETITION FOR DAMAGES

NOW INTO COURT, the plaintiff DARRELL GUILLORY, through undersigned counsel,

files this Original Class Action Petition for Damages:

**Parties**

1. 

A.    *The Plaintiff*

    The plaintiff is:

i.    DARRELL GUILLORY (hereinafter "Mr. Guillory"), individually and a major domiciled

in the parish of St. Charles.

B.    *The Defendants*

    The defendants are :

i.    **THE NATIONAL FOOTBALL LEAGUE,** through Commissioner of Roger Goodell

(hereinafter "NFL"), a foreign Corporation domiciled in New York, licensed to do

business in the State of Louisiana, and all pertinent, whose agent for service of process

through the Louisiana Long Arm Statute, through any corporate officer at 345 Park

Ave., New York, New York 10154;

1

ii. **STATE OF LOUISIANA THROUGH THE LOUISIANA STADIUM AND EXPOSITION DISTRICT(hereinafter "LSED"),** a political subdivision of the state of Louisiana and the legal entity doing business in the Parish of Orleans, State of Louisiana and the legal entity charged with the administration, management and/or operations of the Mercedes Louisiana Superdome;

iii. **THE NFL REFEREES ASSOCIATION**, a foreign association, whose principal officer is Tony Steratore, and is located 1100 Main St., Suite 200, Kansas City, Missouri 64105

iv. **BILL VINOVICH**, who is a resident of Iowa, who is domiciled at 412 Fawn Park Circle, Council Bluffs, Iowa 51503;

v. **PHILLIP MCKINNELY**, a resident of Georgia, who is domiciled at 585 Edgehill Place, Alpharetta, Georgia 30022;

vi. **GARY CAVALETTO**, a resident of California, who is domiciled at 1100 Del Ray Via,    Goleta, California 93117;

vii. **TODD PRUKOP**, a resident of California, who is domiciled at 45 Teaberry, Rancho Santa Margarita, California 92688; and

**Jurisdiction and Venue**

2.

Plaintiff specifically alleges that the acts and conduct of the defendants occurred in Orleans Parish. Thus, venue is proper for these defendants and is proper for all defendants pursuant to Louisiana Code of Civil Procedure Articles 42(4), 42(7), 73, 74, and La. R.S. 13:5104B. Defendant, **STATE OF LOUISIANA THROUGH THE LOUISIANA STADIUM AND EXPOSITION DISTRICT**, a political subdivision of the state of Louisiana and the legal entity doing business in the Parish of Orleans, State of Louisiana and the legal entity charged with the administration, management and/or operations of the Mercedes Louisiana Superdome  with its principal place of business in Louisiana in Orleans Parish, making venue proper pursuant to La. R.S. 13:5104B La. C.C.P. 74. The wrongful tortious conduct of all defendants occurred in Orleans Parish. Venue is proper in Orleans Parish because the defendants are doing business in Orleans Parish. Plaintiff specifically alleges that the acts of defendants, caused the harm of plaintiff and all similarly situated. Thus, venue is proper for these defendants, as joint and solidary obligors and is proper for all defendants pursuant to Louisiana Code of Civil Procedure Articles 42 and 73. This

2

Court has jurisdiction and this suit cannot be brought in federal Court under the 11ᵀᴴ Amendment of the United States Constitution which provides sovereign immunity and prohibits States from being sued in Federal Court. The Eleventh Amendment prevents federal courts from exercising jurisdiction over state defendants. A state may not be sued in federal court by its own citizen or a citizen of another state, unless the state consents to jurisdiction. [Hans v. La., 134 U.S. 1 (1890)].

3.

Plaintiffs are purchasers of tickets to a sporting event that took place on January 20, 2019 at the Mercedes-Benz Superdome, featuring the New Orleans Saints versus the Los Angeles Rams at approximately 2:05pm, CST.

4.

The NFL, along with the other Defendants herein named have promoted a culture of selective enforcement of its own league rules, to the detriment of its own players, moreover, and as specifically shown herein, the NFL did fail to protect players such as Tommylee Lewis from a hit for which the NFL rules attempt to impute <u>strict liability</u> (See Exhibit A) upon the transgressor, Nickell Robey-Coleman (in the present situation). In this failure to enforce its own rules, the NFL is acting in a manner to encourage, promulgate and otherwise promote this failure to protect players who may be concussed or otherwise injured by acts akin to those of Robey-Coleman as described herein. It is impermissible that the NFL can choose to selectively enforce the rights of players at its own will when it comes to the imposition of penalties upon players like Robey-Coleman who commit acts that could well be considered criminal if using the NFL's <u>strict liability</u> (see Exhibit A) language as said acts amount to "aggravated battery" as the players are committing the illegal hit are doing so at their own risk and to the detriment of Tommylee Lewis and anyone else who might be a victim of the illegal hit described herein.

5.

The NFL did fail to protect its defenseless player, Tommylee Lewis, in that it is failing to impose a penalty (and later fines) upon Nickell Robey-Coleman, despite the fact that the NFL has already acknowledged that the actions of Nickell Robey-Coleman were violative of the NFL rules regarding a defenseless player as defined by Rule 12, Article 7, wherein Players in a defenseless posture are (3) a receiver attempting to catch a pass who has not had time to clearly become a

runner. If the player is capable of avoiding or warding off the impending contact of an opponent, he is no longer a defenseless player.

Rule 12, Article 7(b)(1) which is forcibly hitting the defenseless player's head or neck area with the helmet, facemask, forearm, or shoulder, even if the initial contact is lower than the player's neck, and regardless of whether the defensive player also uses his arms to tackle the defenseless player by encircling or grasping him;

Rule 12, Article 7(b)(2) lowering the head and making forcible contact with any part of the helmet against any part of the defenseless player's body; or

Rule 12, Article 7(b)(3) illegally launching into a defenseless opponent. It is an illegal launch if a player (i) leaves both feet prior to contact to spring forward and upward into his opponent, and (ii) uses any part of his helmet to initiate forcible contact against any part of his opponent's body.

6.

The NFL did fail to protect its defenseless player, Tommylee Lewis, in that it is failing to impose a penalty and fines upon Nickell Robey-Coleman, despite the fact that the NFL has already acknowledged that the actions of Nickell Robey-Coleman were violative of the NFL rules regarding a the illegal Use of Helmet as defined by Rule 12, Article 8, as it is a foul if a player lowers his head to initiate and make contact with his helmet against an opponent. (The penalty for such a foul being 15 yards and an automatic first down. The player may also be disqualified.)

7.

In their haste to allow for such an egregious error in judgment, your officials failed to even confer regarding the obvious transgressions of Nickell Robey-Coleman, implying that they had foreseen the possibility of such an incident and intentionally failed to perform their duties to enforce the rules, including but not limited to the potential resultant disqualification/ejection of Nickell Robey-Coleman under Article 8.

8.

The NFL's normal policy of handing down penalties for transgressors such as Robey-Coleman on Mondays has been purposefully avoided, the league has thus intentionally acted in a manner and effort to promote the actions/inactions of its officials named herein.

9.

Moreover, the NFL has demonstrated that it is promoting a culture of selective enforcement of its own rules based on profit, including the failure to take action which might serve to hurt the Los Angeles Rams organization, as it would result in upsetting the third largest market in the United States, to the detriment of the smaller market New Orleans Saints organization.

10.

The NFL in an effort to conceal its conspiratory actions has not just failed to penalize the participants in this matter, but the Defendants have also failed to address the ordinary business of the NFL concerning matters such as this, more specifically they have intentionally failed to:

a) Failure to admonish the officiating crew for their actions and/or inactions as stated herein;

b) Failure to assess financial fines penalties against Nickell Robey-Coleman;

c) Failure to protect defenseless players against potentially dangerous collisions;

d) Failure to respect the rights of Plaintiff and others similarly situated who have a reasonable expectation of Defendants acting in accordance with the rules that it does otherwise promulgated;

e) Defendants Cavaletto, McKinnely, Prukop, and Vinovich- failure to see what they should have seen;

f) Defendants Cavaletto, McKinnely, Prukop, and Vinovich- failure to perform their duties to the NFL and the Plaintiff and those similarly situated;

g) Defendants Cavaletto, McKinnely, Prukop, and Vinovich- failure to protect the players in the contest;

h) NFL and Goodell- failure to properly screen personnel;

i) NFL and Goodell- failure to properly vet their personnel;

j) NFL and Goodell- failure to prevent inherent conflicts of interest, which were the officials having attended colleges or universities in particular geographic areas whose proximity is within the Metropolitan Statistical Area of certain clubs involved in the instant contest;

k) NFL and Goodell- failure to prevent inherent conflicts of interest, which were the residences of officials being located within particular geographic areas whose proximity is within the Metropolitan Statistical Area of certain clubs involved in the instant contest;

l) NFL and Goodell- failure to prevent inherent conflicts of interest, which were the officials residing in the same areas and/or whose residences are located within the general proximity of the Metropolitan Statistical Area of certain clubs involved in the instant contest;

m) NFL and Goodell- failure to prevent inherent conflicts of interest, which were the failure to prevent certain officials who had been employed by the Los Angeles Rams as a football player in the 1981 season, said club involved in the instant contest;

11.

Your Plaintiffs seek the remedy of specific performance directed to NFL Commissioner Roger Goodell, under NFL League Rule 17, Section 2, Extraordinarily Unfair Acts

Article 1. Commissioner Authority. The Commissioner has the sole authority to investigate and take appropriate disciplinary and/or corrective measures if any club action, non-participant interference, or calamity occurs in an NFL game which the Commissioner deems so extraordinarily unfair or outside the accepted tactics encountered in professional football that such action has a major effect on the result of the game.

NFL League Rule 17, Section 2, Article 2. No Club Protests. The authority and measures provided for in this entire Section 2 do not constitute a protest machinery for NFL Clubs to avail themselves of in the event a dispute arises over the result of a game. The investigation called for in this Section 2 will be conducted solely on the Commissioner's initiative to review an act or occurrence that the Commissioner deems so extraordinary or unfair that the result of the game in question would be inequitable to one of the participating teams. The Commissioner will not apply authority in cases of complaints by clubs concerning judgmental errors or routine errors of omission by game officials. Games involving such complaints will continue to stand as completed.

NFL League Rule 17, Section 2, Article 3. Penalties for Unfair Acts. The Commissioner's powers under this Section 2 include the imposition of monetary fines and draft-choice forfeitures, suspension of persons involved in unfair acts, and, if appropriate, the reversal of a game's result or the rescheduling a game, the Commissioner will be guided by the procedures specified in 17-1-

5-11, above. In all cases, the Commissioner will conduct a full investigation, including the opportunity for hearings, use of game video, and any other procedure the Commissioner deems appropriate.

12.

The problem with the aforementioned articles is that Defendant Roger Goodell has the sole authority to invoke this article as per the NFL's Rules and the NFL Collective Bargaining Agreement (CBA) as it reads above, it shows that the NFL Clubs (such as the New Orleans Saints) have yielded the authority to even challenge an offense or open an investigation into potentially extraordinarily unfair acts which might warrant an investigation in an effort to further prevent the questioning of the NFL by its own Clubs. The NFL has shown through history that it is not only willing to impose penalties on Club owners who question its motives, as it has previously penalized Club ownership such as the New Orleans Saints Coaches for "Bounty-Gate" and the New England Patriots for "Deflate-Gate" and the Dallas Cowboys Owner Jerry Jones for his public comments/criticism of Roger Goodell regarding Goodell's contract extension and the treatment of Cowboys Running Back Ezekiel Elliot suspension for the 2017 season.

13.

The NFL has in essence tied the hands of its own owners to prevent them from complaining (either publicly or privately) regarding extraordinarily unfair acts, as such, the NFL has engaged in precluding the complaints of parties aggrieved by its unfair actions, e.g. its treatment of parties who the NFL deems to be a threat to the bottom-line of the league by conspiring and colluding to prevent clubs from extending contracts to players the league deems to be dangerous to its bottom-line.

14.

The NFL has declined to impose penalties despite an overt and public admission by Nickell Robey-Coleman that he "whacked his ass" in referring to his hit on the date in question of Tommylee Lewis.

15.

The NFL has intentionally ignored the admission against his own interest of Robey-Coleman who has indeed publicly admitted that he knowingly and intentionally committed pass

interference on the play in question, which occurred with 1:45 (one minute, forty-five seconds) left on the play clock in the 4th and final Quarter of said sporting event.

16.

In addition to the admittance of Robey-Coleman that he committed the penalty of Pass Interference he did also commit a violation of the rules regarding Head to Head contact, either of which would have resulted in a first down for the New Orleans Saints football team.

17.

If the aforementioned penalty or penalties would have been properly enforced by the officials, it would have resulted in a first down and the play clock would have resulted in approximately 5 seconds left on the game clock.

18.

There is a precedent for replaying portions of a sporting event if there is a league error, as the National Basketball Association has done so on March 8, 2008 in a replay of the final 51.9 seconds of a contest that was originally played on December 19, 2007, between the Miami Heat and the Atlanta Hawks (see attached Associated Press article labeled Plaintiff's Exhibit B) said contest was replayed due to a wrongful ejection of then Heat Center Shaquille O'Neal who had been assessed 5 fouls, not 6 fouls as is required for an ejection.

19.

The NFL has committed intentional tortious acts against the Plaintiff and those similarly situated, including negligent misrepresentation, as the NFL has issued statements of policy, wherein it has put forth statements which appear to be nothing more than propaganda as the NFL has upon information and belief actually participated in a culture promoting cover-ups and concealment of actions and retaliatory acts against parties who would disclose anything that might compromise its bottom-line, such as the purposeful destruction of video-tape evidence that may have shed light on the potentially illegal video-taping practices of other organizations by the New England Patriots in Spy-Gate in 2015.

20.

Regarding the NFL's Statement of Policy, Section III. DISCIPLINARY ACTION:

All employees (regardless of full-time, part-time, seasonal, intern, or other employment status) are expected to adhere to this Policy. If a Compliance Officer establishes, after appropriate investigation, that this Policy has been violated—whether by unethical or unlawful actions, condoning or failing to report information as to inappropriate or illegal actions by others, failure to cooperate in or assist with an investigation, retribution or retaliation against those who report suspected wrongdoing or otherwise—appropriate discipline may result, up to and including termination of employment. The NFL reserves the right to commence civil proceedings or initiate criminal proceedings if, in its sole discretion, it deems such action appropriate in light of the violation established. In considering what discipline or other measures are appropriate, the NFL will take into account and, if appropriate, treat with leniency employees who come forward to provide information regarding their own unethical decision-making or violations of law or policy.

21.

In knowingly acknowledging its ability to "treat with leniency" employees who come forward to provide information regarding violations of law or policy, the NFL does purport to give itself the liberty to do what it wishes to whom it wishes as it pertains to those parties who choose to break NFL rules.

22.

The NFL Referees Association serves at the leisure and mercy of the NFL and the Association has been critical of the NFL in the past, despite the potential for adverse actions being taken by the NFL, as was shown in the labor dispute that occurred in the 2012 season. The union representing NFL on-the-field officials criticized the league Thursday for inconsistencies in grading calls, including two high-profile penalties from recent games. In a release, the NFL Referees' Association says the NFL has "caused confusion for NFL officials as to what the league does and doesn't want called." (See Plaintiff's Exhibit C, which is an ESPN.COM article entitled, "Union Criticizes NFL Inconsistency" dated October 2, 2014.

23.

Said article goes on to say that "Consistency in penalty enforcement is extremely important to the players, coaches and fans. Uncertainty as to what the league wants called is not a road you want to go down," said Jim Quirk, executive director of the NFLRA (See Plaintiff's Exhibit C).

24.

The NFL has failed to properly address the wrongful conduct of Nickell Robey-Coleman as described herein.

25.

The NFL cannot be trusted to police itself when history has shown that the NFL will act with total and complete disregard for the safety of its own players and the NFL has historically failed to disclose things such as the known dangers of Chronic Traumatic Encephalopathy (also known as "CTE") to its players, as to do so could have subjected the NFL to liability for their failure to take preventative measures. The NFL if left to be unregulated, will disregard the rights of its participants in an effort to further its own profit motives.

26.

The NFL and your Defendants have conspired to either commit acts to the detriment of Plaintiffs and those similarly situated, or in the alternative, to at least fail to enforce by way of omission or commission acts which might otherwise cost the NFL money by taking such corrective action as suggested herein because to do so would cost the league significant revenue via the failure to promote the fan base of Los Angeles to support the Rams organization.

27.

In failing to address this situation appropriately and protecting its players, the NFL is endangering the players (participants) in its contests.

28.

The NFL purports to have us all accept the conclusion that this was a judgment call, whilst in reality, this was not arguable as a judgment call, but rather, this was an obvious an overt failure to employ the rules it holds the players to be responsible for playing by.

29.

The acts described herein of the NFL and your Defendants do amount to violations of LA CC Article 2315 and 2316, including but not limited to breaches of duties owed to Plaintiff and those similarly situated, which are acts of omission/commission which are violations of the laws of this state under the following theories of liability:

a)  Tortious Interference with a Contract;

b) Negligent Infliction of Emotional Distress;

c) Intentional Infliction of Emotional Distress;

d) Negligent Misrepresentation;

e) Unjust Enrichment- Defendants have Unjustly Enriched themselves in failing to enforced rules to protect players as described herein, in an effort to maximize profit for NFL;

f) Detrimental Reliance;

g) Mental Anguish;

h) Negligent Hiring;

i) Breach of Contract;

j) Conspiracy;

**LSED failure to perform its duties**

30.

The Louisiana Stadium and Exposition District failed to perform its duties to protect patrons of the NFL game between the New Orleans Saints and the Los Angeles Rams to ensure the integrity of the game from the willful, wanton, and reckless conduct by:

a) Failing to properly screen personnel including but not limited to background check on participating personnel;

b) Failing to prevent inherent conflicts of interest, which were the officials having attended colleges or universities in particular geographic areas whose proximity is within the MSA of certain clubs involved in the instant contest;

c) Failing to prevent inherent conflicts of interest, which were the residences of officials being located within particular geographic areas whose proximity is within the Metropolitan Statistical Area of certain clubs involved in the instant contest;

d) Failing to prevent inherent conflicts of interest, which were the officials residing in the same areas and/or whose residences are located within the general proximity of the Metropolitan Statistical Area of certain clubs involved in the instant contest;

e) Failing to prevent inherent conflicts of interest, which were the failure to prevent certain officials who had been employed by the Los Angeles Rams as a football player in the 1981 season, said club involved in the instant contest;

f) Failing to ensure that the officials officiating the game were not fans of the Los Angeles Rams;

g) Failing to prohibit officials who have family members that are fans of the Los Angeles Rams from officiating the game;

h) Failing to prohibit officials with personal relationships with Los Angeles Rams coaches, staff, and players from officiating the game.

## DAMAGES

### Compensatory Damages by all defendants

31.

As a result of the acts and omissions of the defendants, the plaintiff is entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages are, without limitation:

k) Cost of game tickets;

l) Cost of food and drinks;

m) Parking costs;

n) Hotel costs;

o) Travel costs;

p) Loss of earning capacity for business owners;

q) any other damages to be revealed at the trial of this matter.

32.

As a result of the incident sued upon herein, Plaintiff and those similarly situated have suffered the following injuries:

a. Mental pain and suffering- past present and future;

b. Loss of enjoyment of life- past present and future;

c. Breach of contract;

d. Loss of pecuniary interests which is the value expended for the actual value of the ticket to sporting contest;

e. Loss of pecuniary interest which is the cost of parking associated with attendance of the sporting contest;

f. Severe and debilitating depression; and

g. Any and all other damages to be shown at the trial of the matter.

33.

As a direct result of the aforementioned acts of omission and/or commission of the Defendants, your Plaintiff and those similarly situated were forced to incur attorney's fees and costs associated herewith and your Plaintiff does allege that THE NATIONAL FOOTBALL LEAGUE, ROGER GOODELL, THE NFL REFEREES ASSOCIATION, BILL VINOVICH, GARY CAVALETTO, TODD PRUKOP, PHIL MCKINNELY, LOUISIANA STADIUM AND EXPOSITION DISTRICT are liable to them for all general and equitable damages.

### JOINT AND SOLIDARY LIABILITY

#### 34.

All of the allegations contained in the previous paragraphs are realleged herein. Each of the defendants knew or should have known that its individual actions would combine to cause the injuries of the plaintiff. The actions of each of the defendants are a proximate cause of plaintiff's injuries. As a result, all defendants are jointly and soldarily liable for the damage caused by their combined actions.

**WHEREFORE,** the plaintiff, **Darrell Guillory,** prays that the Defendants, be duly cited to appear and answer this Original Class Petition for damages and that after due proceedings are had there be judgment rendered herein in the plaintiff's favor and against the defendants, **THE NATIONAL FOOTBALL LEAGUE, ROGER GOODELL, THE NFL REFEREES ASSOCIATION, BILL VINOVICH, BRUCE STRITESKY, PATRICK TURNER, RUSTY BAYNES, TOM HILL, GARY CAVALETTO, TODD PRUKOP, PHIL MCKINLEY, LOUISIANA STADIUM AND EXPOSITION DISTRICT,** jointly, severally, and in solido, for an amount reasonable under the premises, for all costs of these proceedings, and for all general and equitable relief to which Plaintiff is entitled in a sum to compensate them for their injuries, pain and suffering, costs, and all general and equitable relief that may be deemed lawful, just, necessary and proper.

Respectfully Submitted:

L. Eric Williams (#26773)
WILLIAMS LAW OFFICE, LLC
3343 Metairie Road, Suite 6

Metairie, LA 70001

504-832-9898

Fax 504-832-9811


-AND-


Tregg C. Wilson (#27328)

WILSON AND WILSON, LLC

8116 One Calais Avenue, Suite 1D

Baton Rouge, Louisiana  70809

Telephone: (225) 663-1900

Fax: (225) 706-8427


**PLEASE SERVE:**

1.     **State of Louisiana, through the**
    **Louisiana Stadium and Exploration District**
    Through the LSED Chairman, Kyle France
    1500 Girod Street
    New Orleans. Louisiana 70113


**SERVICE VIA LONG ARM STATUTE**

2.     **National Football League**, through their
    Commissioner Roger Goodell
    345 Park Ave.
    7th Floor
    New York, New York 10154

3.     **NFL Referee's Association,** through
    Tony Steratore, principal officer
    1100 Main St., Suite 2001
    Kansas City, Missouri 64105

4.     **Bill Vinovich**
    412 Fawn Park Circle
    Council Bluffs, Iowa 51503

5.     **Phillip McKinnely**
    585 Edgehill Place
    Alpharetta, Georgia 30022

6.     **Gary Cavaletto**
    1100 Del Ray Via
    Goleta, California 93117

7.    **Todd Prukop**
      45 Teaberry Lane
      Rancho Santa Margarita, California 92688



# 2018

# OFFICIAL PLAYING RULES

# OF THE

# NATIONAL FOOTBALL LEAGUE



**Roger Goodell, Commissioner**



PLAINTIFF'S EXHIBIT
A

Rule 12, Section 2

(g) unnecessarily running, diving into, cutting, or throwing the body against or on a player who (1) is out of the play or (2) should not have reasonably anticipated such contact by an opponent, before or after the ball is dead;

(h) a kicker/punter, who is standing still or fading backward after the ball has been kicked, is out of the play and must not be unnecessarily contacted by the receiving team through the end of the down or until he assumes a distinctly defensive position. However, a kicker/punter is a defenseless player through the conclusion of the down (see *12-2-7a 8*);

(i) using any part of a player's helmet or facemask to butt, spear, or ram an opponent (*Note: This provision does not prohibit incidental contact by the mask or the helmet in the course of a conventional tackle or block on an opponent*); or

(j) grabbing a helmet opening of an opponent and forcibly twisting, turning, or pulling his head.

**Penalty: For unnecessary roughness: Loss of 15 yards. The player may be disqualified if the action is judged by the official(s) to be flagrant. If the foul is by the defense, it is also an automatic first down.**

*Note: When in question about a roughness call or potentially dangerous tactics, the covering official(s) should always call unnecessary roughness.*

**ARTICLE 7.  PLAYERS IN A DEFENSELESS POSTURE.** It is a foul if a player initiates unnecessary contact against a player who is in a defenseless posture.

(a) Players in a defenseless posture are:
    (1) A player in the act of or just after throwing a pass (passing posture).
    (2) A receiver running a pass route when the defender approaches from the side or behind. If the receiver becomes a blocker or assumes a blocking posture, he is no longer a defenseless player.
    (3) A receiver attempting to catch a pass who has not had time to clearly become a runner. If the player is capable of avoiding or warding off the impending contact of an opponent, he is no longer a defenseless player.
    (4) The intended receiver of a pass in the action during and immediately following an interception or potential interception. If the player is capable of avoiding or warding off the impending contact of an opponent, he is no longer a defenseless player.

    *Note: Violations of this provision will be enforced after the interception, and the intercepting team will maintain possession.*

    (5) A runner already in the grasp of a tackler and whose forward progress has been stopped.
    (6) A kickoff or punt returner attempting to field a kick in the air.
    (7) A player on the ground.
    (8) A kicker/punter during the kick or during the return (Also see Article 6-h) for additional restrictions against a kicker/punter).
    (9) A quarterback at any time after a change of possession (Also see Article 9-f) for additional restrictions against a quarterback after a change of possession.)
    (10) A player who receives a "blindside" block when the path of the blocker is toward or parallel to his own end line.
    (11) A player who is protected from an illegal crackback block (see Article 2).
    (12) The offensive player who attempts a snap during a Field Goal attempt or a Try Kick.

(b) Prohibited contact against a player who is in a defenseless posture is:
    (1) forcibly hitting the defenseless player's head or neck area with the helmet, facemask, forearm, or shoulder, even if the initial contact is lower than the player's neck, and regardless of whether the defensive player also uses his arms to tackle the defenseless player by encircling or grasping him.
    (2) lowering the head and making forcible contact with any part of the helmet against any part of the defenseless player's body; or
    (3) illegally launching into a defenseless opponent. It is an illegal launch if a player (i) leaves both feet prior to contact to spring forward and upward into his opponent, and (ii) uses any part of his helmet to initiate forcible contact against any part of his opponent's body. (This does not apply to contact against a runner, unless the runner is still considered to be a defenseless player, as defined in Article 7.)

*Notes:*
*(1) The provisions of (b) do not prohibit incidental contact by the mask or helmet in the course of a conventional tackle or block on an opponent.*
*(2) A player who initiates contact against a defenseless opponent is responsible for avoiding an illegal act. This includes illegal contact that may occur during the process of attempting to dislodge the ball from an opponent. A standard of strict liability applies for any contact against a defenseless opponent, even if the opponent is an airborne player who is returning to the ground or whose body position is otherwise in motion, and irrespective of any acts by the defenseless opponent, such as ducking his head or curling up his body in anticipation of contact.*

**Penalty: For unnecessary roughness: Loss of 15 yards and an automatic first down. The player may be disqualified if the action is judged by the official(s) to be flagrant.**

**ARTICLE 8.  USE OF THE HELMET.** It is a foul if a player lowers his head to initiate and make contact with his helmet against an opponent.

**Penalty: Loss of 15 yards. If the foul is by the defense, it is also an automatic first down. The player may be disqualified.**

**ARTICLE 9.  ROUGHING THE PASSER.** Because the act of passing often puts the quarterback (or any other player attempting a pass) in a position where he is particularly vulnerable to injury, special rules against roughing the passer apply. The Referee has principal responsibility for enforcing these rules. Any physical acts against a player who is in a passing posture (i.e. before, during, or after a pass) which, in the Referee's judgment, are unwarranted by the circumstances of the play will be called as fouls. The Referee will be guided by the following principles:

49

7.    **Todd Prukop**
      45 Teaberry Lane
      Rancho Santa Margarita, California 92688

Rule 12, Section 2

(a) Roughing will be called if, in the Referee's judgment, a pass rusher clearly should have known that the ball had already left the passer's hand before contact was made; pass rushers are responsible for being aware of the position of the ball in passing situations; the Referee will use the release of the ball from the passer's hand as his guideline that the passer is now fully protected; once a pass has been released by a passer, a rushing defender may make direct contact with the passer only up through the rusher's first step after such release (prior to second step hitting the ground), thereafter the rusher must be making an attempt to avoid contact and must not continue to "drive through" or otherwise forcibly contact the passer; incidental or inadvertent contact by a player who is easing up or being blocked into the passer will not be considered significant.

(b) A rushing defender is prohibited from committing such intimidating and punishing acts as "stuffing" a passer into the ground or unnecessarily wrestling or driving him down after the passer has thrown the ball, even if the rusher makes his initial contact with the passer within the one-step limitation provided for in (a) above. When tackling a passer who is in a defenseless posture (e.g., during or just after throwing a pass), a defensive player must not unnecessarily or violently throw him down or land on top of him with all or most of the defender's weight. Instead, the defensive player must strive to wrap up the passer with the defensive player's arms and not land on the passer with all or most of his body weight.

(c) In covering the passer position, Referees will be particularly alert to fouls in which defenders impermissibly use the helmet and/or facemask to hit the passer, or use hands, arms, or other parts of the body to hit the passer forcibly in the head or neck area (see also the other unnecessary roughness rules covering these subjects). A defensive player must not use his helmet against a passer who is in a defenseless posture—for example, (1) forcibly hitting the passer's head or neck area with the helmet or facemask, even if the initial contact of the defender's helmet or facemask is lower than the passer's neck, and regardless of whether the defensive player also uses his arms to tackle the passer by encircling or grasping him; or (2) lowering the head and making forcible contact with any part of the helmet against any part of the passer's body. This rule does not prohibit incidental contact by the mask or the helmet in the course of a conventional tackle on a passer.

(d) A defensive player is prohibited from clubbing the arm of a passer during a pass or just after a pass has been thrown; however, a defensive player may grasp, pull, or otherwise make normal contact with a passer's arm in attempting to tackle him.

(e) A rushing defender is prohibited from forcibly hitting in the knee area or below a passer who has one or both feet on the ground, even if the initial contact is above the knee. It is not a foul if the defender is blocked (or fouled) into the passer and has no opportunity to avoid him.

*Notes:*

(1) *A defender cannot initiate a roll or lunge and forcibly hit the passer in the knee area or below, even if he is being contacted by another player.*

(2) *It is not a foul if the defender swipes or grabs a passer in the knee area or below in an attempt to tackle him provided he does not make forcible contact with the helmet, shoulder, chest, or forearm.*

(f) A passer who is standing still or fading backward after the ball has left his hand is obviously out of the play and must not be unnecessarily contacted by an opponent through the end of the down or until the passer becomes a blocker, or a runner, or, in the event of a change of possession during the down, until he assumes a distinctly defensive position. However, at any time after the change of possession, it is a foul if:

(1) an opponent forcibly hits the quarterback's head or neck area with his helmet, facemask, forearm, or shoulder

(2) if an opponent lowers his head and makes forcible contact with any part of his helmet against any part of the passer's body. This provision does not prohibit incidental contact by the mask or the helmet in the course of a conventional block.

(g) When the passer goes outside the pocket area and either continues moving with the ball (without attempting to advance the ball as a runner) or throws while on the run, he loses the protection of the one-step rule provided for in (a) above, and the protection against a low hit provided for in (e) above, but he remains covered by all the other special protections afforded to a passer in the pocket (b, c, d, and f), as well as the regular unnecessary roughness rules applicable to all player positions. If the passer stops behind the line and clearly establishes a passing posture, he will then be covered by all of the special protections for passers.

(h) The Referee must blow the play dead as soon as the passer is clearly in the grasp and control of any tackler behind the line, and the passer's safety is in jeopardy.

*Note: A player who initiates contact against a passer is responsible for avoiding an illegal act. This includes illegal contact that may occur during the process of attempting to dislodge the ball. A standard of strict liability applies for any contact against a passer, irrespective of any acts by the passer, such as ducking his head or curling up his body in anticipation of contact.*

**Penalty: For Roughing the Passer: Loss of 15 yards and an automatic first down; disqualification, if flagrant.**

*Notes:*

(1) *When in doubt about a roughness call or potentially dangerous tactic against the quarterback, the Referee should always call roughing the passer.*

(2) *See 8-6-1-c-d for personal fouls prior to completion or interception.*

**ARTICLE 10. ROUGHING/RUNNING INTO THE KICKER.** No defensive player may run into or rough a kicker who kicks from behind the line unless such contact:

(a) is incidental to and occurs after the defender has touched the kick in flight

(b) is caused by the kicker's own motions

(c) occurs during a quick kick or a rugby-style kick

(d) occurs during or after a run behind the line

(e) occurs after the kicker recovers a loose ball on the ground

(f) occurs because a defender is pushed or blocked (causing a change of direction) into the kicker

50

Rule 12, Section 2

(g)  is the result of a foul by an opponent

**Item 1. Roughing the kicker.** It is a foul for roughing the kicker if a defensive player:
(a)  contacts the plant leg of the kicker while his kicking leg is still in the air
(b)  slides into or contacts the kicker when both of the kicker's feet are on the ground. It is not a foul if the contact is not severe, or if the kicker returns both feet to the ground prior to the contact and falls over a defender on the ground

*Note: When in doubt, it is a foul for roughing the kicker.*

**Item 2. Running into the Kicker.** It is a foul for running into the kicker if a defensive player:
(a)  contacts the kicking foot of the kicker, even if the kicker is airborne when the contact occurs
(b)  slides under the kicker, preventing him from returning both feet to the ground

**Penalties:**
(1)  **For roughing the kicker: Loss of 15 yards from the previous spot (personal foul) and an automatic first down. The player may be disqualified if the action is flagrant.**
(2)  **For running into the kicker: Loss of five yards from the previous spot (not a personal foul). There is not an automatic first down.**

**ARTICLE 11.  ROUGHING THE HOLDER.** It is a foul for roughing the holder if a defensive player forcibly contacts the holder of a place kick, unless the contact:
(a)  is incidental and occurs after the defender has touched the kick in flight
(b)  is caused because a defender is blocked into the holder
(c)  occurs after the holder recovers a ball that has touched the ground

**Penalty: For roughing the holder: Loss of 15 yards from the previous spot (personal foul) and an automatic first down. The player may be disqualified is the action is flagrant.**

*Notes:*
*(1)  Any unnecessary roughness committed by defensive players is roughing the kicker or holder. The severity of the contact and the potential for injury are to be considered.*
*(2)  When two defensive players are making a bona fide attempt to block a kick from scrimmage (punt, drop kick, and/or placekick), and one of them runs into the kicker or holder after the ball has left the kicker's foot at the same instant the second player blocks the kick, the foul for running into the kicker or holder shall not be enforced, unless in the judgment of the Referee, the player running into the kicker or holder was clearly the direct cause of the kick being blocked.*

**ARTICLE 12.  STRIKING, KICKING, OR KNEEING OPPONENTS.** All players are prohibited from:
(a)  striking an opponent with his fists
(b)  kicking or kneeing an opponent
(c)  striking, swinging at, or clubbing the head, neck, or face of an opponent with the wrist(s), arm(s), elbow(s), or hand(s)

**Exceptions:** Contact to the head, neck, or face of an opponent with the palm of the hand is permitted:
(1)  by a defensive player who is attempting to ward off an offensive player at the line of scrimmage, provided that it is not a repeated act against the same opponent during any one contact; or
(2)  by any player in a personal attempt to recover a loose ball.
**Penalty: For fouls in (a) through (c): Loss of 15 yards. If any of the fouls is judged by the official(s) to be flagrant, the offender may be disqualified as long as the entire action is observed by the official(s). If the foul is by the defense, it is also an automatic first down.**

**ARTICLE 13.  STRIKING WITH FOREARMS OR ELBOWS.** A player in blocking shall not strike an opponent below the shoulders with his forearm or elbows by turning the trunk of his body at the waist, pivoting, or in any other way that is clearly unnecessary.

**Penalty: For striking an opponent below the shoulders with the forearm or elbow: Loss of 15 yards. If the foul is by the defense, it is also an automatic first down.**

**ARTICLE 14.  TWISTING, PULLING, OR TURNING THE FACEMASK.** No player shall grasp and control, twist, turn, push, or pull the facemask of an opponent in any direction.

*Note: If a player grasps an opponent's facemask, he must immediately release it. If he does not immediately release it and controls his opponent, it is a foul.*

**Penalty:  For twisting, turning, pushing, pulling, or controlling the mask: Loss of 15 yards. The player may be disqualified if the action is flagrant. If the foul is by the defense, it is also an automatic first down.**

**ARTICLE 15.  HORSE-COLLAR TACKLE.** No player shall grab the inside collar of the back or the side of the shoulder pads or jersey, or grab the jersey at the name plate or above, and pull the runner toward the ground. This does not apply to a runner who is in the tackle box or to a quarterback who is in the pocket.

*Note: It is not necessary for a player to pull the runner completely to the ground in order for the act to be illegal. If his knees are buckled by the action, it is a foul, even if the runner is not pulled completely to the ground.*

**Penalty: For a Horse-Collar Tackle: Loss of 15 yards and an automatic first down.**

**ARTICLE 16.  USE OF HELMET AS A WEAPON.** A player may not use a helmet that is no longer worn by anyone as a weapon to strike, swing at, or throw at an opponent.

**Penalty: For illegal use of a helmet as a weapon: Loss of 15 yards and automatic disqualification. If the foul is by the defense, it is also an automatic first down.**

 ESPN.com: NBA          [Print without images]          

Friday, January 11, 2008
Updated: January 12, 10:52 PM ET

# Heat, Hawks to replay final minute of Dec. 19 game later this year

ATLANTA -- For the first time since 1982, the NBA is sending two teams back to the court for a do-over.

The Atlanta Hawks and Miami Heat must replay the final 51.9 seconds of their game last month because the official scorer ruled incorrectly that Shaquille O'Neal fouled out, the league said Friday.

The Hawks won 117-111 at home in overtime Dec. 19, but strike that one from the books. For now, playoff-contending Atlanta has one less win, while the Heat have one less loss on their miserable record.

**Protested Games Upheld**



Instances in NBA history when the protest of a game has been granted:

**Matchup:** Heat at Hawks
**Date:** Dec. 19, 2007
**Scenario:** The Heat protested because, with 51.9 seconds remaining in OT, the Hawks' scoring table personnel incorrectly disqualified Miami's Shaquille O'Neal, asserting that a foul committed by O'Neal was his sixth of the game (it was only his fifth). Misstep: The Hawks' official scorer mistakenly attributed to O'Neal a foul at 3:24 remaining in the fourth quarter that was actually called against the Heat's Udonis Haslem.
**Ruling:** The protest will result is the ending of the game being replayed.

**Matchup:** Lakers at Spurs
**Date:** Nov. 30, 1982
**Scenario:** The Spurs claimed misapplication of the lane violation rule with 3 seconds left.
**Ruling:** Protest was upheld on grounds that the error clearly affected the outcome of the game.

**Matchup:** Nets at 76ers
**Date:** Nov. 8, 1978
**Scenario:** Nets claimed misapplication of technical foul rule in second quarter resulting in four unwarranted free throws and ejection of their head coach.
**Ruling:** Protest upheld on grounds that the error clearly affected the outcome of the game.

**Matchup:** Celtics at Lakers
**Date:** Dec. 8, 1954
**Scenario:** The Celtics claimed that the final two free throws by Vern Mikkelsen were not valid because they came on a foul committed after the game ended.
**Ruling:** Commissioner Maurice Podoloff upheld the referee's ruling.
*-- Compiled by ESPN Research*

"We're human. We make mistakes," Hawks owner Michael Gearon Jr. said. "There certainly wasn't anything malicious about it. We have one of the most senior scoring staffs in the league. They're good. It happened. There's not much we can do about it."

Making it a truly miserable day: Atlanta followed up Stern's decision by losing to Washington 102-98 in overtime.

The NBA said the replay will be held before the teams' next scheduled game: March 8 in Atlanta. Play will start from the time after O'Neal's disputed sixth foul, with the Hawks leading 114-111.

PLAINTIFF'S EXHIBIT B

"Wait a minute! I picked up a win today, or lost a loss," Heat coach Pat Riley quipped in New Orleans, where the Heat played the Hornets. "I can wake up tomorrow knowing there's one less loss."

The Hawks also were fined $50,000, with commissioner David Stern ruling the team was "grossly negligent" in failing to address the mistake.

The protest is the first granted by the NBA since December 1982, when then-NBA commissioner Larry O'Brien upheld a request for a replay by the San Antonio Spurs after their 137-132 double-overtime loss to the Los Angeles Lakers the previous month.

The Spurs and Lakers finished the game in April 1983, with San Antonio winning 117-114.

The Hawks were caught off guard by Stern's ruling, feeling he was trying to send a message in light of another scoring mistake that occurred in Atlanta early last season.

"Come on," Gearon said. "You can see how many time coaches, assistant coaches and trainers walk up to [the scoring table] during a game. They're walking up there for a reason. They're asking questions, whether it's confirming timeout or points or other issues."

Team spokesman Arthur Triche said no one on the stat crew had been replaced, but changes have been made in the way they operate. Two people run the official book at courtside, while the four-person computer stat crew is 26 rows above the court in another press location. The two crews are supposed to check with each other if any discrepancies come up.

"While it was an honest mistake made on the table, there was a communication breakdown in not following through the procedures that are in place," Triche said. "That's why we're in this predicament."

The Hawks were leading 112-111 in overtime when O'Neal was called for a foul. The official scorers said it was the Miami center's sixth foul, when actually it was only his fifth.

The mistake stemmed from a foul with 3:24 remaining in the fourth quarter that was called on Udonis Haslem but was mistakenly credited to O'Neal at the scoring table.

"That's crazy, man! I don't even think I can play because I fouled out," Atlanta's Josh Smith said. "David Stern is the head honcho, so if he says we've got to play another 51 seconds that's what we've got to play. Bottom line."

Stern ruled the Hawks "failed to follow league-mandated scoring procedures and failed to respond effectively when the members of the statisticians' crew noticed the mistake," the NBA said in a statement.

66

**Bottom line is we're here to try to make the playoffs. You've got to live with it. We'll face those 51 seconds in March.** 99

--Hawks coach Mike Woodson

Said Haslem: "I'm not the kind of guy who likes to argue or cry over spilled milk, but we've got a second chance so we'll try to make the best of it."

While the Heat are having a terrible, going into Friday's game last in the Eastern Conference with a record that is now 8-27 instead of 8-28, the decision could have a profound impact on Atlanta's hopes of making the playoffs for the first time since 1999.

Losing the win over Miami dropped the Hawks to 15-16, leaving them with the eighth -- and final -- seed in the East. Imagine if they lose the replay, then miss the playoffs by one game.

"Bottom line is we're here to try to make the playoffs," said coach Mike Woodson, whose team faced the Washington Wizards on Friday night. "You've got to live with it. We'll face those 51 seconds in March."

The NBA requires the official scorers to coordinate foul calls with the rest of the stat crew during every timeout. That apparently didn't happen in this case, resulting in the mistake going unnoticed until after the game, when the Hawks put out revised boxes showing O'Neal with six fouls.

"Other than filing the protest, I haven't given it any thought since then. It wasn't until everybody started doing some research on all of the things that went on behind the scenes," Riley said.

"I don't really know the what the checks and balances are for fouls and how they're done. I think the league felt we probably deserved an opportunity to go back and play the last 51 seconds."

Especially because this involved Atlanta, where another statistical problem occurred just last season.

On Nov. 24, 2006, the official scorer failed to credit Toronto's T.J. Ford with a basket that would have given the Raptors a late tie and an opportunity to change the outcome of a 97-93 loss.

"Because of this conduct by Atlanta's personnel, Miami suffered a clear competitive disadvantage, as O'Neal -- the Heat's second-leading scorer and rebounder that night -- was removed from a one-point game with only 51.9 seconds remaining," the NBA statement said.

On the NBA's official Web site, those final 51 seconds have already been wiped from the books. The Dec. 19 schedule shows 12 games as finals, but the one in Atlanta is still in progress. The box score and play-by-play are on hold, ending at the time of Horford's free throws.

Al Horford hit two free throws after O'Neal's foul to put the Hawks up 114-111. That's where the game will resume.

Miami's ball.

"It's always something with the Hawks," Atlanta's Tyronn Lue said. "It's a bad business, man, but we'll get through it."

 ESPN.com: NFL    [Print without images]    

Thursday, October 2, 2014

## Union criticizes NFL inconsistency

NEW YORK -- The union representing NFL on-the-field officials criticized the league Thursday for inconsistencies in grading calls, including two high-profile penalties from recent games.

In a release, the NFL Referees' Association says the NFL has "caused confusion for NFL officials as to what the league does and doesn't want called."

The union referred to penalties on Washington's Chris Baker for a hit on Eagles quarterback Nick Foles on Sept. 21, and to Chiefs safety Husain Abdullah on Monday night for going to his knees to celebrate an interception return for a touchdown. Abdullah actually had gone to his knees to pray -- an act exempted from celebration penalties.

The union says both calls were graded as correct even after NFL executives announced that they were incorrect. Baker got a 15-yard penalty and was ejected from the game at Philadelphia. Abdullah also received a 15-yard penalty.

"Consistency in penalty enforcement is extremely important to the players, coaches and fans. Uncertainty as to what the league wants called is not a road you want to go down," said Jim Quirk, executive director of the NFLRA.

Quirk noted that Baker was penalized for a blindside block on Foles as a personal foul. A brawl followed near the Washington sideline, and Eagles tackle Jason Peters was also ejected.

Two days later, Troy Vincent, the NFL's executive vice president of football operations, said the hit was legal and should not have been penalized. Yet, the NFLRA said, the league's officiating department a day later graded the call as correct.

In the case of Abdullah, a devout Muslim who took off a year from football to go on a pilgrimage to Mecca, the league said Tuesday that the penalty was in error.

The NFL responded with a statement Thursday.

"The officiating supervisors recognize that for an incorrect call on a close judgment play the official may have used appropriate reasoning," league spokesman Michael Signora said. "On such a call, the official is not downgraded."

Signora went on to address each situation. In the case of Foles, he said, "It was not a foul because the quarterback was pursuing the play, the contact was not to the head or neck area, and the play was not over. However, the referee -- watching the play at full speed and without the benefit of a replay review -- judged that the block was late and threw a flag. While not a correct call, we understand why it was made."

As far as Abdullah, Signora said: "A player who goes to the ground as part of religious expression should not be penalized. While he did slide immediately before beginning his prayer, this was not a correct call and the play should not have resulted in a penalty."

Regardless, said former NFLRA president Scott Green, a recently retired referee, there's a communications problem between the NFL and its game officials.

"It seems there is a disconnect between what the officiating department expects from officials and the public statements being made by league executives," Green said. "It certainly creates uncertainty for the guys making split-second decisions on the field."

*Information from The Associated Press was used in this report.*





**DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

DOCKET NO.:19-00739          DIVISION " G "          SECTION "11"

**DARRELL GUILLORY, on behalf of himself and all others similarly situated,**

**VERSUS**

**THE NATIONAL FOOTBALL LEAGUE, THE NFL REFEREES ASSOCIATION, BILL
VINOVICH, GARY CAVALETTO, TODD PRUKOP, LOUISIANA STADIUM AND
EXPOSITION DISTRICT**

FILED: _____    _____

                                   **DEPUTY CLERK**

**FIRST AMENDED CLASS ACTION PETITION FOR DAMAGES**

   NOW INTO COURT, comes the plaintiff **DARRELL GUILLORY**, New Orleans Saints

season ticket holder and ticket holder to the underlying event, on behalf of himself and all others

similarly through undersigned counsel, files this First Amended Class Action Petition for

Damages:

**Parties**

1.

A.    *The Plaintiff*

      The plaintiff is:

   i. **DARRELL GUILLORY** (hereinafter "Mr. Guillory"), individually and, as a major,

      domiciled in the parish of St. Charles.

B.    *The* Defendants

      The defendants are :

   i. **THE NATIONAL FOOTBALL LEAGUE,** through its Commissioner, Roger Goodell

      (hereinafter "NFL"), a foreign corporation domiciled in New York, licensed to do

      business in the State of Louisiana, whose agent for service of process through the Louisiana

Long Arm Statute, through any corporate officer at 345 Park Ave., New York, New York 10154;

ii.  **STATE OF LOUISIANA THROUGH THE LOUISIANA STADIUM AND EXPOSITION DISTRICT(hereinafter "LSED"),** a political subdivision of the state of Louisiana and the legal entity doing business in the Parish of Orleans, State of Louisiana and the legal entity charged with the administration, management and/or operations of the Mercedes Louisiana Superdome;

iii.  **THE NFL REFEREES ASSOCIATION**, a foreign association conducting business in Orleans Parish, State of Louisiana, whose principal officer is Tony Steratore, and is located 1100 Main St., Suite 200, Kansas City, Missouri 64105;

iv.  **BILL VINOVICH**, a resident of Iowa, who is domiciled at 412 Fawn Park Circle, Council Bluffs, Iowa 51503;

v.  **GARY CAVALETTO**, a resident of California, who is domiciled at 1100 Del Ray Via,    Goleta, California 93117;

vi.  **TODD PRUKOP**, a resident of California, who is domiciled at 45 Teaberry, Rancho Santa Margarita, California 92688.

**Jurisdiction and Venue**

**2.**

Plaintiff specifically alleges that the acts and conduct of the defendants occurred in Orleans Parish. Thus, venue is proper for these defendants and is proper for all defendants pursuant to Louisiana Code of Civil Procedure Articles 42(4), 42(7), 73, 74, and La. R.S. 13:5104B. Defendant, **STATE OF LOUISIANA THROUGH THE LOUISIANA STADIUM AND EXPOSITION DISTRICT**, a political subdivision of the state of Louisiana and a legal entity doing business in the Parish of Orleans, State of Louisiana and the legal entity charged with the administration, management and/or operations of the Mercedes Louisiana Superdome with its principal place of business in Louisiana in Orleans Parish, making venue proper pursuant to La. R.S. 13:5104B and La. C.C.P. 74. The wrongful tortious conduct of all defendants occurred in Orleans Parish. Venue is proper in Orleans Parish because the defendants are doing business in Orleans Parish. Plaintiff specifically alleges that the acts of defendants, caused the harm of plaintiff and all others similarly situated. Thus, venue is proper for these defendants, as joint and solidary obligors and is proper for all defendants pursuant to Louisiana Code of Civil Procedure

Articles 42 and 73. This Court has jurisdiction and this suit cannot be brought in federal Court under the 11TH Amendment of the United States Constitution which provides sovereign immunity and prohibits States from being sued in Federal Court. The Eleventh Amendment prevents federal courts from exercising jurisdiction over state defendants. A state may not be sued in federal court by its own citizen or a citizen of another state, unless the state consents to jurisdiction. [Hans v. La., 134 U.S. 1 (1890)].

**3.**

Plaintiffs are purchasers of tickets to a sporting event that took place on January 20, 2019 at the Mercedes-Benz Superdome, featuring the New Orleans Saints versus the Los Angeles Rams at approximately 2:05pm, CST and all other New Orleans Saints season ticket holders and attendees/ticket holders of said sporting event.

**4.**

The NFL, along with the other Defendants herein named have promoted a culture of selective enforcement of its own league rules, to the detriment of its own players, moreover, and as specifically shown herein, the NFL did fail to protect players such as Tommylee Lewis from a hit for which the NFL rules attempt to impute strict liability (See Exhibit A) upon the transgressor, Nickell Robey-Coleman (in the present situation). In this failure to enforce its own rules, the NFL is acting in a manner to encourage, promulgate and otherwise promote this failure to protect players who may be concussed or otherwise injured by acts akin to those of Robey-Coleman as described herein. It is impermissible that the NFL can choose to selectively enforce the rights of players at its own will when it comes to the imposition of penalties upon players like Robey-Coleman who commit acts that could well be considered criminal if using the NFL's strict liability (see Exhibit A) language as said acts amount to "aggravated battery" as the players are committing the illegal hit are doing so at their own risk and to the detriment of Tommylee Lewis and anyone else who might be a victim of the illegal hit described herein.

**5.**

The NFL did fail to protect its defenseless player, Tommylee Lewis, in that it is failing to impose a penalty (and later fines) upon Nickell Robey-Coleman, despite the fact that the NFL has already acknowledged that the actions of Nickell Robey-Coleman were violative of the NFL rules regarding a defenseless player as defined by Rule 12, Article 7, wherein Players in a defenseless

posture are (3) a receiver attempting to catch a pass who has not had time to clearly become a runner. If the player is capable of avoiding or warding off the impending contact of an opponent, he is no longer a defenseless player.

Rule 12, Article 7(b)(1) which is forcibly hitting the defenseless player's head or neck area with the helmet, facemask, forearm, or shoulder, even if the initial contact is lower than the player's neck, and regardless of whether the defensive player also uses his arms to tackle the defenseless player by encircling or grasping him;

Rule 12, Article 7(b)(2) lowering the head and making forcible contact with any part of the helmet against any part of the defenseless player's body; or

Rule 12, Article 7(b)(3) illegally launching into a defenseless opponent. It is an illegal launch if a player (i) leaves both feet prior to contact to spring forward and upward into his opponent, and (ii) uses any part of his helmet to initiate forcible contact against any part of his opponent's body.

### 6.

The NFL did fail to protect its defenseless player, Tommylee Lewis, in that it is failing to impose a penalty and fines upon Nickell Robey-Coleman, despite the fact that the NFL has already acknowledged that the actions of Nickell Robey-Coleman were violative of the NFL rules regarding a the illegal Use of Helmet as defined by Rule 12, Article 8, as it is a foul if a player lowers his head to initiate and make contact with his helmet against an opponent. (The penalty for such a foul being 15 yards and an automatic first down. The player may also be disqualified.)

### 7.

In their haste to allow for such an egregious error in judgment, the officials failed to even confer regarding the obvious transgressions of Nickell Robey-Coleman, implying that they had foreseen the possibility of such an incident and intentionally failed to perform their duties to enforce the rules, including but not limited to the potential resultant disqualification/ejection of Nickell Robey-Coleman under Article 8.

### 8.

The NFL's normal policy of handing down penalties for transgressors such as Robey-Coleman on Mondays has been purposefully avoided, the league has thus intentionally acted in a manner and effort to promote the actions/inactions of its officials named herein.

4

**9.**

Moreover, the NFL has demonstrated that it is promoting a culture of selective enforcement of its own rules based on profit, including the failure to take action which might serve to hurt the Los Angeles Rams organization, as it would result in upsetting the third largest market in the United States, to the detriment of the smaller market New Orleans Saints organization.

**10.**

The NFL in an effort to conceal its conspiratory actions has not just failed to penalize the participants in this matter, but the Defendants have also failed to address the ordinary business of the NFL concerning matters such as this, more specifically they have intentionally failed to:

a) Failure to admonish the officiating crew for their actions and/or inactions as stated herein;

b) Failure to assess financial fines and penalties against Nickell Robey-Coleman;

c) Failure to protect defenseless players against potentially dangerous collisions;

d) Failure to respect the rights of Plaintiff and others similarly situated who have a reasonable expectation of Defendants acting in accordance with the rules that it does otherwise promulgated;

e) Defendants Cavaletto, Prukop, and Vinovich- failure to see what they should have seen;

f) Defendants Cavaletto, Prukop, and Vinovich- failure to perform their duties to the NFL and the Plaintiff and those similarly situated;

g) Defendants Cavaletto, Prukop, and Vinovich- failure to protect the players in the contest;

h) NFL and Goodell- failure to properly screen personnel;

i) NFL and Goodell- failure to properly vet their personnel;

j) NFL and Goodell- failure to prevent inherent conflicts of interest, which were the officials having attended colleges or universities in particular geographic areas whose proximity is within the Metropolitan Statistical Area of certain clubs involved in the instant contest;

k) NFL and Goodell- failure to prevent inherent conflicts of interest, which were the residences of officials being located within particular geographic areas whose proximity is within the Metropolitan Statistical Area of certain clubs involved in the instant contest;

I) NFL and Goodell- failure to prevent inherent conflicts of interest, which were the officials residing in the same areas and/or whose residences are located within the general proximity of the Metropolitan Statistical Area of certain clubs involved in the instant contest.

11.

Your Plaintiffs seek the remedy of specific performance directed to NFL. Commissioner Roger Goodell, under NFL League Rule 17, Section 2, Extraordinarily Unfair Acts

Article 1. Commissioner Authority. The Commissioner has the sole authority to investigate and take appropriate disciplinary and/or corrective measures if any club action, non-participant interference, or calamity occurs in an NFL game which the Commissioner deems so extraordinarily unfair or outside the accepted tactics encountered in professional football that such action has a major effect on the result of the game.

NFL League Rule 17, Section 2, Article 2. No Club Protests. The authority and measures provided for in this entire Section 2 do not constitute a protest machinery for NFL Clubs to avail themselves of in the event a dispute arises over the result of a game. The investigation called for in this Section 2 will be conducted solely on the Commissioner's initiative to review an act or occurrence that the Commissioner deems so extraordinary or unfair that the result of the game in question would be inequitable to one of the participating teams. The Commissioner will not apply authority in cases of complaints by clubs concerning judgmental errors or routine errors of omission by game officials. Games involving such complaints will continue to stand as completed.

NFL League Rule 17, Section 2, Article 3. Penalties for Unfair Acts. The Commissioner's powers under this Section 2 include the imposition of monetary fines and draft-choice forfeitures, suspension of persons involved in unfair acts, and, if appropriate, the reversal of a game's result or the rescheduling a game, the Commissioner will be guided by the procedures specified in 17-1-5-11, above. In all cases, the Commissioner will conduct a full investigation, including the opportunity for hearings, use of game video, and any other procedure the Commissioner deems appropriate.

12.

The problem with the aforementioned articles is that Defendant, NFL, through its Commissioner Roger Goodell, has the sole authority to invoke this article as per the NFL's Rules and the NFL Collective Bargaining Agreement (CBA) as it reads above, it shows that the NFL Clubs (such as the New Orleans Saints) have yielded the authority to even challenge an offense or open an investigation into potentially extraordinarily unfair acts which might warrant an investigation in an effort to further prevent the questioning of the NFL by its own Clubs. The NFL has shown through history that it is not only willing to impose penalties on Club owners who question its motives, as it has previously penalized Club ownership such as the New Orleans Saints Coaches for "Bounty-Gate" and the New England Patriots for "Deflate-Gate" and the Dallas Cowboys Owner Jerry Jones for his public comments/criticism of Roger Goodell regarding Goodell's contract extension and the treatment of Cowboys Running Back Ezekiel Elliot suspension for the 2017 season.

13.

The NFL has in essence tied the hands of its own owners to prevent them from complaining (either publicly or privately) regarding extraordinarily unfair acts, as such, the NFL has engaged in precluding the complaints of parties aggrieved by its unfair actions, e.g. its treatment of parties who the NFL deems to be a threat to the bottom-line of the league by conspiring and colluding to prevent clubs from extending contracts to players the league deems to be dangerous to its bottom-line.

14.

The NFL has declined to impose penalties despite an overt and public admission by Nickell Robey-Coleman that he "whacked his ass" in referring to his hit on the date in question of Tommylee Lewis.

15.

The NFL has intentionally ignored the admission against his own interest of Robey-Coleman who has indeed publicly admitted that he knowingly and intentionally committed pass interference on the play in question, which occurred with 1:45 (one minute, forty-five seconds) left on the play clock in the 4th and final Quarter of said sporting event.

16.

In addition to the admittance of Robey-Coleman that he committed the penalty of Pass Interference he did also commit a violation of the rules regarding Head to Head contact, either of which would have resulted in a first down for the New Orleans Saints football team.

17.

If the aforementioned penalty or penalties would have been properly enforced by the officials, it would have resulted in a first down and the play clock would have ultimately resulted in approximately 5 seconds left on the game clock at the time when the New Orleans Saints would have attempted the game winning field goal. This try for a field goal would have more likely than not been attempted at a distance shorter than an extra point attempt and been as successful as Will Lutz actual successful try.

18.

There is a precedent for replaying portions of a sporting event if there is a league error, as the National Basketball Association has done so on March 8, 2008 in a replay of the final 51.9 seconds of a contest that was originally played on December 19, 2007, between the Miami Heat and the Atlanta Hawks (see attached Associated Press article labeled Plaintiff's Exhibit B) said contest was replayed due to a wrongful ejection of then Heat Center Shaquille O'Neal who had been assessed 5 fouls, not 6 fouls as is required for an ejection.

19.

The NFL has committed intentional tortious acts against the Plaintiff and those similarly situated, including negligent misrepresentation, as the NFL has issued statements of policy, wherein it has put forth statements which appear to be nothing more than propaganda as the NFL has upon information and belief actually participated in a culture promoting cover-ups and concealment of actions and retaliatory acts against parties who would disclose anything that might compromise its bottom-line, such as the purposeful destruction of video-tape evidence that may have shed light on the potentially illegal video-taping of practices of other organizations by the New England Patriots in Spy-Gate in 2015.

20.

Regarding the NFL's Statement of Policy, Section III. DISCIPLINARY ACTION:

All employees (regardless of full-time, part-time, seasonal, intern, or other employment status) are expected to adhere to this Policy. If a Compliance Officer establishes, after appropriate investigation, that this Policy has been violated—whether by unethical or unlawful actions, condoning or failing to report information as to inappropriate or illegal actions by others, failure to cooperate in or assist with an investigation, retribution or retaliation against those who report suspected wrongdoing or otherwise—appropriate discipline may result, up to and including termination of employment. The NFL reserves the right to commence civil proceedings or initiate criminal proceedings if, in its sole discretion, it deems such action appropriate in light of the violation established. In considering what discipline or other measures are appropriate, the NFL will take into account and, if appropriate, treat with leniency employees who come forward to provide information regarding their own unethical decision-making or violations of law or policy.

21.

In knowingly acknowledging its ability to "treat with leniency" employees who come forward to provide information regarding violations of law or policy, the NFL does purport to give itself the liberty to do what it wishes to whom it wishes as it pertains to those parties who choose to break NFL rules.

22.

The NFL Referees Association serves at the leisure and mercy of the NFL and the Association has been critical of the NFL in the past, despite the potential for adverse actions being taken by the NFL, as was shown in the labor dispute that occurred in the 2012 season. The union representing NFL on-the-field officials criticized the league Thursday for inconsistencies in grading calls, including two high-profile penalties from recent games. In a release, the NFL Referees' Association says the NFL has "caused confusion for NFL officials as to what the league does and doesn't want called." (See Plaintiff's Exhibit C, which is an ESPN.COM article entitled, "Union Criticizes NFL Inconsistency" dated October 2, 2014.

23.

Said article goes on to say that "Consistency in penalty enforcement is extremely important to the players, coaches and fans. Uncertainty as to what the league wants called is not a road you want to go down," said Jim Quirk, executive director of the NFLRA (See Plaintiff's Exhibit C).

24.

The NFL has failed to properly address the wrongful conduct of Nickell Robey-Coleman as described herein.

25.

The NFL cannot be trusted to police itself when history has shown that the NFL will act with total and complete disregard for the safety of its own players and the NFL has historically failed to disclose things such as the known dangers of Chronic Traumatic Encephalopathy (also known as "CTE") to its players, as to do so could have subjected the NFL to liability for their failure to take preventative measures. The NFL, if left to be unregulated, will disregard the rights of its participants in an effort to further its own profit motives.

26.

The NFL and your Defendants have conspired to either commit acts to the detriment of Plaintiffs and those similarly situated, or in the alternative, to at least fail to enforce by way of omission or commission acts which might otherwise cost the NFL money by taking such corrective action as suggested herein because to do so would cost the league significant revenue via the failure to promote the fan base of Los Angeles to support the Rams organization.

27.

In failing to address this situation appropriately and protecting its players, the NFL is endangering the players (participants) in its contests.

28.

The NFL purports to have us all accept the conclusion that this was a judgment call, whilst in reality, this was not arguable as a judgment call, but rather, this was an obvious an overt failure to employ the rules it holds the players to be responsible for playing by.

29.

The acts described herein of the NFL and your Defendants do amount to violations of LA CC Article 2315 and 2316, including but not limited to breaches of duties owed to Plaintiff and those similarly situated, which are acts of omission/commission which are violations of the laws of this state under the following theories of liability:

**a)** Tortious Interference with a Contract:

b) Negligent Infliction of Emotional Distress;

c) Intentional Infliction of Emotional Distress;

d) Negligent Misrepresentation;

e) Unjust Enrichment- Defendants have Unjustly Enriched themselves in failing to enforced rules to protect players as described herein, in an effort to maximize profit for NFL;

f) Detrimental Reliance;

g) Mental Anguish;

h) Negligent Hiring;

i) Breach of Contract;

j) Conspiracy;

### Negligence of LSED

#### 30.

The Louisiana Stadium and Exposition District failed to perform its duties to protect patrons of the NFL game between the New Orleans Saints and the Los Angeles Rams to ensure the integrity of the game from the willful, wanton, and reckless conduct by:

a) Failing to properly screen personnel, including but not limited to, background checks on participating personnel;

b) Failing to prevent inherent conflicts of interest, which were the officials having attended colleges or universities in particular geographic areas whose proximity is within the Metropolitan Statistical Area of certain clubs involved in the instant contest;

c) Failing to prevent inherent conflicts of interest, which were the residences of officials being located within particular geographic areas whose proximity is within the Metropolitan Statistical Area of certain clubs involved in the instant contest;

d) Failing to prevent inherent conflicts of interest, which were the officials residing in the same areas and/or whose residences are located within the general proximity of the Metropolitan Statistical Area of certain clubs involved in the instant contest;

e) Failing to ensure that the officials officiating the game were not fans of the Los Angeles Rams;

f) Failing to prohibit officials who have family members that are fans of the Los Angeles Rams from officiating the game;

g) Failing to prohibit officials with personal relationships with Los Angeles Rams coaches, staff, and players from officiating the game.

### 31.

Nickell Robey-Coleman's admission that he knew he was beat on the play and had to "whack his ass" in referring to the non-called pass interference and helmet to helmet contact he inflicted on Tommylee Lewis indicates his gross, reckless, and intentional conduct and the NFL not imposing and penalty or fine on Mr. Robey-Coleman is denying Darrell Guillory and other similarly situated New Orleans Saints fans their ability to watch the New Orleans Saints participate in the NFL Super Bowl game that is to take place on February 3, 2019. Additionally, Mr. Robey-Coleman's statement that "obviously I smacked his ass... put that boy on a mother f***** Waffle House frying pan," in referencing the hit on Tommylee Lewis indicates Mr. Robey-Coleman's total disregard for the safety and well-being of Mr. Lewis as well as his gross, reckless, and intentional conduct committed during the game between the New Orleans Saints and the Los Angeles Rams.

### DAMAGES

#### Compensatory Damages by all defendants

### 31.

As a result of the acts and omissions of the defendants, the plaintiff and all others similarly situated are entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages are, without limitation:

a) Cost of game tickets;

b) Cost of food and drinks;

c) Parking costs;

d) Hotel costs;

e) Travel costs;

f) Loss of earning capacity for business owners;

g) Denial of New Orleans Saints fans the opportunity to watch the team play in the NFL Super Bowl on February 3, 2019;

g) Any other damages to be revealed at the trial of this matter.

### 32.

As a result of the incident sued upon herein, Plaintiff and those similarly situated have suffered the following injuries:

a)    Mental pain and suffering- past present and future;

b)    Loss of enjoyment of life- past present and future;

c)    Breach of contract;

d)    Loss of pecuniary interests which is the value expended for the actual value of the ticket to sporting contest;

e)    Loss of pecuniary interest which is the cost of parking associated with attendance of the sporting contest;

f)    Severe and debilitating depression; and

g)    Any and all other damages to be shown at the trial of the matter.

**33.**

As a direct result of the aforementioned acts of omission and/or commission of the Defendants, your Plaintiff and those similarly situated were forced to incur attorney's fees and costs associated herewith and your Plaintiff does allege that **THE NATIONAL FOOTBALL LEAGUE, THE NFL REFEREES ASSOCIATION, BILL VINOVICH, GARY CAVALETTO, TODD PRUKOP, LOUISIANA STADIUM AND EXPOSITION DISTRICT** are liable to them for all general and equitable damages.

**JOINT AND SOLIDARY LIABILITY**

**34.**

All of the allegations contained in the previous paragraphs are realleged herein. Each of the defendants knew or should have known that its individual actions would combine to cause the injuries of the plaintiff and others similarly situated. The actions of each of the defendants are a proximate cause of plaintiff's injuries. As a result, all defendants are jointly and solidarily liable for the damage caused by their combined actions.

**35.**

Plaintiff demands trial by jury on all issues so triable.

**WHEREFORE,** the plaintiff, **Darrell Guillory,** prays that the Defendants, be duly cited to appear and answer this Original Class Petition for damages and that after due proceedings are had there be judgment rendered herein in the plaintiff's favor and against the defendants, **THE**

NATIONAL FOOTBALL LEAGUE, THE NFL REFEREES ASSOCIATION, BILL VINOVICH, GARY CAVALETTO, TODD PRUKOP, LOUISIANA STADIUM AND EXPOSITION DISTRICT, jointly, severally, and in solido, for an amount reasonable under the premises, for all costs of these proceedings, and for all general and equitable relief to which Plaintiff is entitled in a sum to compensate them for their injuries, pain and suffering, costs, and all general and equitable relief that may be deemed lawful, just, necessary and proper.

                          Respectfully Submitted:


L. Eric Williams (#26773)
**WILLIAMS LAW OFFICE, LLC**
3343 Metairie Road, Suite 6
Metairie, LA 70001
Tel: 504-832-9898
Fax 504-832-9811
eric@amlbenzene.net

**THE LAW OFFICES OF JOHN
J. FINCKBEINER, JR.**
John J. Finckbeiner, Jr. # 18211
2203 Pakenham Drive
Chalmette, Louisiana 70043
Telephone: (504) 279-5177
Facsimile: (504) 279-5375


              -AND-


Tregg C. Wilson (#27328)
**WILSON AND WILSON, LLC**
8116 One Calais Avenue, Suite 1D
Baton Rouge, Louisiana 70809
Tel: (225) 663-1900
Fax: (225) 706-8427


**PLEASE SERVE:**

1.    **State of Louisiana, through the
      Louisiana Stadium and Exploration District**
      Through the LSED Chairman, Kyle France
      1500 Girod Street
      New Orleans, Louisiana 70113

<u>**SERVICE VIA LONG ARM STATUTE**</u>

2.    **National Football League**, through their
      Commissioner Roger Goodell
      345 Park Ave,
      7th Floor
      New York, New York 10154

3.    **NFL Referee's Association,** through
      Tony Steratore, principal officer
      1100 Main St., Suite 2001
      Kansas City, Missouri 64105

4.    **Bill Vinovich**
      412 Fawn Park Circle
      Council Bluffs, Iowa 51503

5.    **Gary Cavaletto**
      1100 Del Ray Via
      Goleta, California 93117

6.    **Todd Prukop**
      45 Teaberry Lane
      Rancho Santa Margarita, California 92688



# 2018

# OFFICIAL PLAYING RULES

# OF THE

# NATIONAL FOOTBALL LEAGUE



**Roger Goodell, Commissioner**



Rule 12, Section 2

(g) unnecessarily running, diving into, cutting, or throwing the body against or on a player who (1) is out of the play or (2) should not have reasonably anticipated such contact by an opponent, before or after the ball is dead;

(h) a kicker/punter, who is standing still or fading backward after the ball has been kicked, is out of the play and must not be unnecessarily contacted by the receiving team through the end of the down or until he assumes a distinctly defensive position. However, a kicker/punter is a defenseless player through the conclusion of the down (see 12-2-7a-8);

(i) using any part of a player's helmet or facemask to butt, spear, or ram an opponent (*Note: This provision does not prohibit incidental contact by the mask or the helmet in the course of a conventional tackle or block on an opponent*); or

(j) grabbing a helmet opening of an opponent and forcibly twisting, turning, or pulling his head.

**Penalty: For unnecessary roughness: Loss of 15 yards. The player may be disqualified if the action is judged by the official(s) to be flagrant. If the foul is by the defense, it is also an automatic first down.**

> **Note:** *When in question about a roughness call or potentially dangerous tactics, the covering official(s) should always call unnecessary roughness.*

**ARTICLE 7. PLAYERS IN A DEFENSELESS POSTURE.** It is a foul if a player initiates unnecessary contact against a player who is in a defenseless posture.

(a) Players in a defenseless posture are:

  (1) A player in the act of or just after throwing a pass (passing posture).

  (2) A receiver running a pass route when the defender approaches from the side or behind. If the receiver becomes a blocker or assumes a blocking posture, he is no longer a defenseless player.

  (3) A receiver attempting to catch a pass who has not had time to clearly become a runner. If the player is capable of avoiding or warding off the impending contact of an opponent, he is no longer a defenseless player.

  (4) The intended receiver of a pass in the action during and immediately following an interception or potential interception. If the player is capable of avoiding or warding off the impending contact of an opponent, he is no longer a defenseless player.

> **Note:** *Violations of this provision will be enforced after the interception, and the intercepting team will maintain possession.*

  (5) A runner already in the grasp of a tackler and whose forward progress has been stopped.

  (6) A kickoff or punt returner attempting to field a kick in the air.

  (7) A player on the ground.

  (8) A kicker/punter during the kick or during the return (Also see Article 6-h) for additional restrictions against a kicker/punter).

  (9) A quarterback at any time after a change of possession (Also see Article 9-f) for additional restrictions against a quarterback after a change of possession).

  (10) A player who receives a "blindside" block when the path of the blocker is toward or parallel to his own end line.

  (11) A player who is protected from an illegal crackback block (see Article 2).

  (12) The offensive player who attempts a snap during a Field Goal attempt or a Try Kick.

(b) Prohibited contact against a player who is in a defenseless posture is:

  (1) forcibly hitting the defenseless player's head or neck area with the helmet, facemask, forearm, or shoulder, even if the initial contact is lower than the player's neck, and regardless of whether the defensive player also uses his arms to tackle the defenseless player by encircling or grasping him.

  (2) lowering the head and making forcible contact with any part of the helmet against any part of the defenseless player's body; or

  (3) illegally launching into a defenseless opponent. It is an illegal launch if a player (i) leaves both feet prior to contact to spring forward and upward into his opponent, and (ii) uses any part of his helmet to initiate forcible contact against any part of his opponent's body. (This does not apply to contact against a runner, unless the runner is still considered to be a defenseless player, as defined in Article 7.)

*Notes:*

  *(1) The provisions of (b) do not prohibit incidental contact by the mask or helmet in the course of a conventional tackle or block on an opponent.*

  *(2) A player who initiates contact against a defenseless opponent is responsible for avoiding an illegal act. This includes illegal contact that may occur during the process of attempting to dislodge the ball from an opponent. A standard of strict liability applies for any contact against a defenseless opponent, even if the opponent is an airborne player who is returning to the ground or whose body position is otherwise in motion, and irrespective of any acts by the defenseless opponent, such as ducking his head or curling up his body in anticipation of contact.*

**Penalty: For unnecessary roughness: Loss of 15 yards and an automatic first down. The player may be disqualified if the action is judged by the official(s) to be flagrant.**

**ARTICLE 8. USE OF THE HELMET.** It is a foul if a player lowers his head to initiate and make contact with his helmet against an opponent.

**Penalty: Loss of 15 yards. If the foul is by the defense, it is also an automatic first down. The player may be disqualified.**

**ARTICLE 9. ROUGHING THE PASSER.** Because the act of passing often puts the quarterback (or any other player attempting a pass) in a position where he is particularly vulnerable to injury, special rules against roughing the passer apply. The Referee has principal responsibility for enforcing these rules. Any physical acts against a player who is in a passing posture (i.e. before, during, or after a pass) which, in the Referee's judgment, are unwarranted by the circumstances of the play will be called as fouls. The Referee will be guided by the following principles:

7.  **Todd Prukop**
    45 Teaberry Lane
    Rancho Santa Margarita, California 92688

Rule 12. Section 2

(a) Roughing will be called if, in the Referee's judgment, a pass rusher clearly should have known that the ball had already left the passer's hand before contact was made; pass rushers are responsible for being aware of the position of the ball in passing situations; the Referee will use the release of the ball from the passer's hand as his guideline that the passer is now fully protected; once a pass has been released by a passer, a rushing defender may make direct contact with the passer only up through the rusher's first step after such release (prior to second step hitting the ground); thereafter the rusher must be making an attempt to avoid contact and must not continue to "drive through" or otherwise forcibly contact the passer; incidental or inadvertent contact by a player who is easing up or being blocked into the passer will not be considered significant.

(b) A rushing defender is prohibited from committing such intimidating and punishing acts as "stuffing" a passer into the ground or unnecessarily wrestling or driving him down after the passer has thrown the ball, even if the rusher makes his initial contact with the passer within the one-step limitation provided for in (a) above. When tackling a passer who is in a defenseless posture (e.g., during or just after throwing a pass), a defensive player must not unnecessarily or violently throw him down or land on top of him with all or most of the defender's weight. Instead, the defensive player must strive to wrap up the passer with the defensive player's arms and not land on the passer with all or most of his body weight.

(c) In covering the passer position, Referees will be particularly alert to fouls in which defenders impermissibly use the helmet and/or facemask to hit the passer, or use hands, arms, or other parts of the body to hit the passer forcibly in the head or neck area (see also the other unnecessary roughness rules covering these subjects). A defensive player must not use his helmet against a passer who is in a defenseless posture—for example, (1) forcibly hitting the passer's head or neck area with the helmet or facemask, even if the initial contact of the defender's helmet or facemask is lower than the passer's neck, and regardless of whether the defensive player also uses his arms to tackle the passer by encircling or grasping him; or (2) lowering the head and making forcible contact with any part of the helmet against any part of the passer's body. This rule does not prohibit incidental contact by the mask or the helmet in the course of a conventional tackle on a passer.

(d) A defensive player is prohibited from clubbing the arm of a passer during a pass or just after a pass has been thrown; however, a defensive player may grasp, pull, or otherwise make normal contact with a passer's arm in attempting to tackle him.

(e) A rushing defender is prohibited from forcibly hitting in the knee area or below a passer who has one or both feet on the ground, even if the initial contact is above the knee. It is not a foul if the defender is blocked (or fouled) into the passer and has no opportunity to avoid him.

*Notes:*
*(1) A defender cannot initiate a roll or lunge and forcibly hit the passer in the knee area or below, even if he is being contacted by another player.*
*(2) It is not a foul if the defender swipes or grabs a passer in the knee area or below in an attempt to tackle him provided he does not make forcible contact with the helmet, shoulder, chest, or forearm.*

(f) A passer who is standing still or fading backward after the ball has left his hand is obviously out of the play and must not be unnecessarily contacted by an opponent through the end of the down or until the passer becomes a blocker, or a runner, or, in the event of a change of possession during the down, until he assumes a distinctly defensive position. However, at any time after the change of possession, it is a foul if:
(1) an opponent forcibly hits the quarterback's head or neck area with his helmet, facemask, forearm, or shoulder
(2) if an opponent lowers his head and makes forcible contact with any part of his helmet against any part of the passer's body. This provision does not prohibit incidental contact by the mask or the helmet in the course of a conventional block.

(g) When the passer goes outside the pocket area and either continues moving with the ball (without attempting to advance the ball as a runner) or throws while on the run, he loses the protection of the one-step rule provided for in (a) above, and the protection against a low hit provided for in (e) above, but he remains covered by all the other special protections afforded to a passer in the pocket (b, c, d, and f), as well as the regular unnecessary roughness rules applicable to all player positions. If the passer stops behind the line and clearly establishes a passing posture, he will then be covered by all of the special protections for passers.

(h) The Referee must blow the play dead as soon as the passer is clearly in the grasp and control of any tackler behind the line, and the passer's safety is in jeopardy.

*Note: A player who initiates contact against a passer is responsible for avoiding an illegal act. This includes illegal contact that may occur during the process of attempting to dislodge the ball. A standard of strict liability applies for any contact against a passer, irrespective of any acts by the passer, such as ducking his head or curling up his body in anticipation of contact.*

**Penalty: For Roughing the Passer: Loss of 15 yards and an automatic first down; disqualification, if flagrant.**

*Notes:*
*(1) When in doubt about a roughness call or potentially dangerous tactic against the quarterback, the Referee should always call roughing the passer.*
*(2) See 8-6-1-c–d for personal fouls prior to completion or interception.*

**ARTICLE 10.  ROUGHING/RUNNING INTO THE KICKER.** No defensive player may run into or rough a kicker who kicks from behind the line unless such contact:
(a) is incidental to and occurs after the defender has touched the kick in flight
(b) is caused by the kicker's own motions
(c) occurs during a quick kick or a rugby-style kick
(d) occurs during or after a run behind the line
(e) occurs after the kicker recovers a loose ball on the ground
(f) occurs because a defender is pushed or blocked (causing a change of direction) into the kicker

Rule 12, Section 2

(g)  is the result of a foul by an opponent

**Item 1. Roughing the kicker.** It is a foul for roughing the kicker if a defensive player:
(a)  contacts the plant leg of the kicker while his kicking leg is still in the air
(b)  slides into or contacts the kicker when both of the kicker's feet are on the ground. It is not a foul if the contact is not severe, or if the kicker returns both feet to the ground prior to the contact and falls over a defender on the ground

  *Note: When in doubt, it is a foul for roughing the kicker.*

**Item 2. Running into the Kicker.** It is a foul for running into the kicker if a defensive player:
(a)  contacts the kicking foot of the kicker, even if the kicker is airborne when the contact occurs
(b)  slides under the kicker, preventing him from returning both feet to the ground

**Penalties:**
(1)  **For roughing the kicker: Loss of 15 yards from the previous spot (personal foul) and an automatic first down. The player may be disqualified if the action is flagrant.**
(2)  **For running into the kicker: Loss of five yards from the previous spot (not a personal foul). There is not an automatic first down.**

**ARTICLE 11. ROUGHING THE HOLDER.** It is a foul for roughing the holder if a defensive player forcibly contacts the holder of a place kick, unless the contact:
(a)  is incidental and occurs after the defender has touched the kick in flight
(b)  is caused because a defender is blocked into the holder
(c)  occurs after the holder recovers a ball that has touched the ground

**Penalty: For roughing the holder: Loss of 15 yards from the previous spot (personal foul) and an automatic first down. The player may be disqualified is the action is flagrant.**

  *Notes:*
  (1)  *Any unnecessary roughness committed by defensive players is roughing the kicker or holder. The severity of the contact and the potential for injury are to be considered.*
  (2)  *When two defensive players are making a bona fide attempt to block a kick from scrimmage (punt, drop kick, and/or placekick), and one of them runs into the kicker or holder after the ball has left the kicker's foot at the same instant the second player blocks the kick, the foul for running into the kicker or holder shall not be enforced, unless in the judgment of the Referee, the player running into the kicker or holder was clearly the direct cause of the kick being blocked.*

**ARTICLE 12. STRIKING, KICKING, OR KNEEING OPPONENTS.** All players are prohibited from:
(a)  striking an opponent with his fists
(b)  kicking or kneeing an opponent
(c)  striking, swinging at, or clubbing the head, neck, or face of an opponent with the wrist(s), arm(s), elbow(s), or hand(s)

  **Exceptions:** Contact to the head, neck, or face of an opponent with the palm of the hand is permitted:
  (1)  by a defensive player who is attempting to ward off an offensive player at the line of scrimmage, provided that it is not a repeated act against the same opponent during any one contact; or
  (2)  by any player in a personal attempt to recover a loose ball.

**Penalty: For fouls in (a) through (c): Loss of 15 yards. If any of the fouls is judged by the official(s) to be flagrant, the offender may be disqualified as long as the entire action is observed by the official(s). If the foul is by the defense, it is also an automatic first down.**

**ARTICLE 13. STRIKING WITH FOREARMS OR ELBOWS.** A player in blocking shall not strike an opponent below the shoulders with his forearm or elbows by turning the trunk of his body at the waist, pivoting, or in any other way that is clearly unnecessary.

**Penalty: For striking an opponent below the shoulders with the forearm or elbow: Loss of 15 yards. If the foul is by the defense, it is also an automatic first down.**

**ARTICLE 14. TWISTING, PULLING, OR TURNING THE FACEMASK.** No player shall grasp and control, twist, turn, push, or pull the facemask of an opponent in any direction.

  *Note: If a player grasps an opponent's facemask, he must immediately release it. If he does not immediately release it and controls his opponent, it is a foul.*

**Penalty: For twisting, turning, pushing, pulling, or controlling the mask: Loss of 15 yards. The player may be disqualified if the action is flagrant. If the foul is by the defense, it is also an automatic first down.**

**ARTICLE 15. HORSE-COLLAR TACKLE.** No player shall grab the inside collar of the back or the side of the shoulder pads or jersey, or grab the jersey at the name plate or above, and pull the runner toward the ground. This does not apply to a runner who is in the tackle box or to a quarterback who is in the pocket.

  *Note: It is not necessary for a player to pull the runner completely to the ground in order for the act to be illegal. If his knees are buckled by the action, it is a foul, even if the runner is not pulled completely to the ground.*

**Penalty: For a Horse-Collar Tackle: Loss of 15 yards and an automatic first down.**

**ARTICLE 16. USE OF HELMET AS A WEAPON.** A player may not use a helmet that is no longer worn by anyone as a weapon to strike, swing at, or throw at an opponent.

**Penalty: For illegal use of a helmet as a weapon: Loss of 15 yards and automatic disqualification. If the foul is by the defense, it is also an automatic first down.**

51

 **ESPN.com:** NBA

[Print without images]

Posted: January 12, 2008
Updated: January 12, 2008 PM 27

# Heat, Hawks to replay final minute of Dec. 19 game later this year

By Associated Press

ATLANTA -- For the first time since 1982, the NBA is sending two teams back to the court for a do-over.

The Atlanta Hawks and Miami Heat must replay the final 51.9 seconds of their game last month because the official scorer ruled incorrectly that Shaquille O'Neal fouled out, the league said Friday.

The Hawks won 117-111 at home in overtime Dec. 19, but strike that one from the books. For now, playoff-contending Atlanta has one less win, while the Heat have one less loss on their miserable record.

### Protested Games Upheld



Instances in NBA history when the protest of a game has been granted:

**Matchup:** Heat at Hawks
**Date:** Dec. 19, 2007
**Scenario:** The Heat protested because, with 51.9 seconds remaining in OT, the Hawks' scoring table personnel incorrectly disqualified Miami's Shaquille O'Neal, asserting that a foul committed by O'Neal was his sixth of the game (it was only his fifth). Misstep: The Hawks' official scorer mistakenly attributed to O'Neal a foul at 3:24 remaining in the fourth quarter that was actually called against the Heat's Udonis Haslem.
**Ruling:** The protest will result is the ending of the game being replayed.

**Matchup:** Lakers at Spurs
**Date:** Nov. 30, 1982
**Scenario:** The Spurs claimed misapplication of the lane violation rule with 3 seconds left.
**Ruling:** Protest was upheld on grounds that the error clearly affected the outcome of the game.

**Matchup:** Nets at 76ers
**Date:** Nov. 8, 1978
**Scenario:** Nets claimed misapplication of technical foul rule in second quarter resulting in four unwarranted free throws and ejection of their head coach.
**Ruling:** Protest upheld on grounds that the error clearly affected the outcome of the game.

**Matchup:** Celtics at Lakers
**Date:** Dec. 8, 1954
**Scenario:** The Celtics claimed that the final two free throws by Vern Mikkelsen were not valid because they came on a foul committed after the game ended.
**Ruling:** Commissioner Maurice Podoloff upheld the referee's ruling.
*-- Compiled by ESPN Research*

"We're human. We make mistakes," Hawks owner Michael Gearon Jr. said. "There certainly wasn't anything malicious about it. We have one of the most senior scoring staffs in the league. They're good. It happened. There's not much we can do about it."

Making it a truly miserable day: Atlanta followed up Stern's decision by losing to Washington 102-98 in overtime.

The NBA said the replay will be held before the teams' next scheduled game: March 8 in Atlanta. Play will start from the time after O'Neal's disputed sixth foul, with the Hawks leading 114-111.

PLAINTIFF'S EXHIBIT B

"Wait a minute! I picked up a win today, or lost a loss," Heat coach Pat Riley quipped in New Orleans, where the Heat played the Hornets. "I can wake up tomorrow knowing there's one less loss."

The Hawks also were fined $50,000, with commissioner David Stern ruling the team was "grossly negligent" in failing to address the mistake.

The protest is the first granted by the NBA since December 1982, when then-NBA commissioner Larry O'Brien upheld a request for a replay by the San Antonio Spurs after their 137-132 double-overtime loss to the Los Angeles Lakers the previous month.

The Spurs and Lakers finished the game in April 1983, with San Antonio winning 117-114.

The Hawks were caught off guard by Stern's ruling, feeling he was trying to send a message in light of another scoring mistake that occurred in Atlanta early last season.

"Come on," Gearon said. "You can see how many time coaches, assistant coaches and trainers walk up to [the scoring table] during a game. They're walking up there for a reason. They're asking questions, whether it's confirming timeout or points or other issues."

Team spokesman Arthur Triche said no one on the stat crew had been replaced, but changes have been made in the way they operate. Two people run the official book at courtside, while the four-person computer stat crew is 26 rows above the court in another press location. The two crews are supposed to check with each other if any discrepancies come up.

"While it was an honest mistake made on the table, there was a communication breakdown in not following through the procedures that are in place," Triche said. "That's why we're in this predicament."

The Hawks were leading 112-111 in overtime when O'Neal was called for a foul. The official scorers said it was the Miami center's sixth foul, when actually it was only his fifth.

The mistake stemmed from a foul with 3:24 remaining in the fourth quarter that was called on Udonis Haslem but was mistakenly credited to O'Neal at the scoring table.

"That's crazy, man! I don't even think I can play because I fouled out," Atlanta's Josh Smith said. "David Stern is the head honcho, so if he says we've got to play another 51 seconds that's what we've got to play. Bottom line."

Stern ruled the Hawks "failed to follow league-mandated scoring procedures and failed to respond effectively when the members of the statisticians' crew noticed the mistake," the NBA said in a statement.

66

**Bottom line is we're here to try to make the playoffs. You've got to live with it. We'll face those 51 seconds in March. 99**

--Hawks coach Mike Woodson

Said Haslem: "I'm not the kind of guy who likes to argue or cry over spilled milk, but we've got a second chance so we'll try to make the best of it."

While the Heat are having a terrible, going into Friday's game last in the Eastern Conference with a record that is now 8-27 instead of 8-28, the decision could have a profound impact on Atlanta's hopes of making the playoffs for the first time since 1999.

Losing the win over Miami dropped the Hawks to 15-16, leaving them with the eighth -- and final -- seed in the East. Imagine if they lose the replay, then miss the playoffs by one game.

"Bottom line is we're here to try to make the playoffs," said coach Mike Woodson, whose team faced the Washington Wizards on Friday night. "You've got to live with it. We'll face those 51 seconds in March."

The NBA requires the official scorers to coordinate foul calls with the rest of the stat crew during every timeout. That apparently didn't happen in this case, resulting in the mistake going unnoticed until after the game, when the Hawks put out revised boxes showing O'Neal with six fouls.

"Other than filing the protest, I haven't given it any thought since then. It wasn't until everybody started doing some research on all of the things that went on behind the scenes." Riley said.

"I don't really know the what the checks and balances are for fouls and how they're done. I think the league felt we probably deserved an opportunity to go back and play the last 51 seconds."

Especially because this involved Atlanta, where another statistical problem occurred just last season.

On Nov. 24, 2006, the official scorer failed to credit Toronto's T.J. Ford with a basket that would have given the Raptors a late tie and an opportunity to change the outcome of a 97-93 loss.

"Because of this conduct by Atlanta's personnel, Miami suffered a clear competitive disadvantage, as O'Neal -- the Heat's second-leading scorer and rebounder that night -- was removed from a one-point game with only 51.9 seconds remaining," the NBA statement said.

On the NBA's official Web site, those final 51 seconds have already been wiped from the books. The Dec. 19 schedule shows 12 games as finals, but the one in Atlanta is still in progress. The box score and play-by-play are on hold, ending at the time of Horford's free throws.

Al Horford hit two free throws after O'Neal's foul to put the Hawks up 114-111. That's where the game will resume.

Miami's ball.

"It's always something with the Hawks," Atlanta's Tyronn Lue said. "It's a bad business, man, but we'll get through it."

 **ESPN.com:** NFL

[Print without images]



## Union criticizes NFL inconsistency

NEW YORK -- The union representing NFL on-the-field officials criticized the league Thursday for inconsistencies in grading calls, including two high-profile penalties from recent games.

In a release, the NFL Referees' Association says the NFL has "caused confusion for NFL officials as to what the league does and doesn't want called."

The union referred to penalties on Washington's Chris Baker for a hit on Eagles quarterback Nick Foles on Sept. 21, and to Chiefs safety Husain Abdullah on Monday night for going to his knees to celebrate an interception return for a touchdown. Abdullah actually had gone to his knees to pray -- an act exempted from celebration penalties.

The union says both calls were graded as correct even after NFL executives announced that they were incorrect. Baker got a 15-yard penalty and was ejected from the game at Philadelphia. Abdullah also received a 15-yard penalty.

"Consistency in penalty enforcement is extremely important to the players, coaches and fans. Uncertainty as to what the league wants called is not a road you want to go down," said Jim Quirk, executive director of the NFLRA.

Quirk noted that Baker was penalized for a blindside block on Foles as a personal foul. A brawl followed near the Washington sideline, and Eagles tackle Jason Peters was also ejected.

Two days later, Troy Vincent, the NFL's executive vice president of football operations, said the hit was legal and should not have been penalized. Yet, the NFLRA said, the league's officiating department a day later graded the call as correct.

In the case of Abdullah, a devout Muslim who took off a year from football to go on a pilgrimage to Mecca, the league said Tuesday that the penalty was in error.

The NFL responded with a statement Thursday.

"The officiating supervisors recognize that for an incorrect call on a close judgment play the official may have used appropriate reasoning," league spokesman Michael Signora said. "On such a call, the official is not downgraded."

Signora went on to address each situation. In the case of Foles, he said, "It was not a foul because the quarterback was pursuing the play, the contact was not to the head or neck area, and the play was not over. However, the referee -- watching the play at full speed and without the benefit of a replay review -- judged that the block was late and threw a flag. While not a correct call, we understand why it was made."

As far as Abdullah, Signora said: "A player who goes to the ground as part of religious expression should not be penalized. While he did slide immediately before beginning his prayer, this was not a correct call and the play should not have resulted in a penalty."

Regardless, said former NFLRA president Scott Green, a recently retired referee, there's a communications problem between the NFL and its game officials.

"It seems there is a disconnect between what the officiating department expects from officials and the public statements being made by league executives," Green said. "It certainly creates uncertainty for the guys making split-second decisions on the field."

*Information from The Associated Press was used in this report.*


PLAINTIFF'S
EXHIBIT
C

# WILLIAMS LAW OFFICE, LLC

ATTORNEYS AT LAW

Eric Williams* LLM ENVIRONMENTAL & ENERGY LAW
Natalie Williams

Lynn Williams, Sr.
Tregg C. Wilson

3343 METAIRIE ROAD
SUITE 6
METAIRIE, LOUISIANA 70001
TELEPHONE: (504) 832-9898
FACSIMILE:  (504) 832-9811
EMAIL: eric@amlbenzene.net
EMAIL: natalie@amlbenzene.net

RECEIVED

JAN 2 5 2019

CLERK OF COURT
CIVIL DISTRICT COURT

CALAIS AVENUE
SUITE 1-D
BATON ROUGE, LOUISIANA 70809
PHONE: (225) 663-1900
FACSIMILE: (225)706-8427
lynn@amlbenzene.net
tregg@amlbenzene.net
EMAIL: brett@amlbenzene.net

January 22, 2019

RE:    ***Darrell Guillory  v. The National Football League,  et al***
No.:    **19-00739- Division "G-11" CDC**

Dear Honorable Clerk:

The please see the attached *First Amended Class Action Petition for Damages* that is being filed by fax in the above referenced civil matter.

Please contact Tregg Wilson at 225-663-1900 if you do not receive a total of twenty-four pages (24) inclusive of exhibits.

Thank you for your courtesy and prompt attention to this matter.

        With kindest regards, I am

                Very truly yours,

                WILLIAMS LAW OFFICE, LLC

ATTORNEY'S NAME: Williams, Lynn E 26773
AND ADDRESS: 3343 Metairie Road Suite 6, Metairie, LA 70001

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

| NO: 2019-00739 | DIVISION: G | SECTION: 11 |

### GUILLORY, DARRELL

#### Versus

### THE NATIONAL FOOTBALL LEAGUE  ET AL

### CITATION - LONG ARM

TO: THE NATIONAL FOOTBALL LEAGUE

THROUGH: THE LOUISIANA LONG ARM STATUTE  THEIR COMMISSIONER ROGER GOODELL

345 PARK AVE, 7TH FLOOR, NEW YORK , NY 10154

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the
Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30)
days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through
the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New
Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast
Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.
**\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\***

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA January 31, 2019

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by
Barbara Gaude, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ _____ served a copy of the within | On this _____ day of _____ _____ served a copy of the within |
| **First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages** | **First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages** |
| ON  THE NATIONAL FOOTBALL LEAGUE | ON  THE NATIONAL FOOTBALL LEAGUE |
| THROUGH: **THE LOUISIANA LONG ARM STATUTE  THEIR COMMISSIONER ROGER GOODELL** | THROUGH: **THE LOUISIANA LONG ARM STATUTE  THEIR COMMISSIONER ROGER GOODELL** |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said **THE NATIONAL FOOTBALL LEAGUE** being absent from the domicile at time of said service. |
| _____ No. _____ | |
| Deputy Sheriff of _____ | Returned the same day |
| Mileage: $ _____ | _____ No. _____ |
| _____ / ENTERED / _____ | Deputy Sheriff of _____ |
| PAPER | RETURN | |
| _____ / _____ / _____ | |
| SERIAL NO. | DEPUTY | PARISH | |

ATTORNEY'S NAME:    Williams, Lynn E 26773
AND ADDRESS:        3343 Metairie Road Suite 6, Metairie, LA 70001

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2019-00739            DIVISION: G            SECTION: 11

### GUILLORY, DARRELL

**Versus**

### THE NATIONAL FOOTBALL LEAGUE  ET AL

### CITATION

TO:        STATE OF LOUISIANA,THROUGH THE LOUISIANA STADIUM AND EXPLORATION
           DISTRICT

THROUGH:   THE LSED CHAIRMAN, KYLE FRANCE

           1500 GIROD STREER, NEW ORLEANS, LA 70113

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the
Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15)
days after the service hereof under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New
Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast
Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA January 31, 2019

Clerk's Office, Room 402, Civil Courts        CHELSEY RICHARD NAPOLEON, Clerk of
421 Loyola Avenue                             The Civil District Court
New Orleans, LA                               for the Parish of Orleans
                                              State of LA
                                              by _Barbara Gaude_
                                              Barbara Gaude, Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages | First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages |
| ON  STATE OF LOUISIANA,THROUGH THE LOUISIANA STADIUM AND EXPLORATION DISTRICT | ON  STATE OF LOUISIANA,THROUGH THE LOUISIANA STADIUM AND EXPLORATION DISTRICT |
| THROUGH:  THE LSED CHAIRMAN, KYLE FRANCE | THROUGH:  THE LSED CHAIRMAN, KYLE FRANCE |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and |
| _____ No. _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating |
| Deputy Sheriff of _____ | HIM/HER the said STATE OF LOUISIANA,THROUGH THE LOUISIANA STADIUM AND EXPLORATION DISTRICT being absent from the domicile |
| Mileage: $ _____ | at time of said service. |
| _____ / ENTERED / _____ | Returned the same day |
| PAPER            RETURN | |
| _____ /            _____ / | _____ No. _____ |
| SERIAL NO.      DEPUTY      PARISH | Deputy Sheriff of _____ |

ATTORNEY'S NAME:    Williams, Lynn E 26773
AND ADDRESS:          3343 Metairie Road Suite 6, Metairie, LA 70001

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2019-00739             DIVISION: G             SECTION: 11

### GUILLORY, DARRELL

Versus

### THE NATIONAL FOOTBALL LEAGUE  ET AL

### CITATION - LONG ARM

TO:          THE NFL REFEREES ASSOCIATION

THROUGH:   THE LOUISIANA LONG ARM STATUTE  TONY STERATORE, PRINCIPAL OFFICER

1100 MAIN STREET, SUITE 2001, KANSAS CITY, MO 64105

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\***

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA January 31, 2019

Clerk's Office, Room 402, Civil Courts          CHELSEY RICHARD NAPOLEON, Clerk of
421 Loyola Avenue                                The Civil District Court
New Orleans, LA                                  for the Parish of Orleans
                                                 State of LA
                                                 by
                                                 Barbara Gaude, Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages | First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages |
| ON THE NFL REFEREES ASSOCIATION | ON THE NFL REFEREES ASSOCIATION |
| THROUGH: THE LOUISIANA LONG ARM STATUTE TONY STERATORE, PRINCIPAL OFFICER | THROUGH: THE LOUISIANA LONG ARM STATUTE TONY STERATORE, PRINCIPAL OFFICER |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said THE NFL REFEREES ASSOCIATION being absent from the domicile at time of said service. |
| _____ No. _____ | |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED / _____ | _____ No. _____ |
| PAPER          RETURN | Deputy Sheriff of _____ |
| ____/_____/____ | |
| SERIAL NO.     DEPUTY     PARISH | |

**ATTORNEY'S NAME:** · Williams, Lynn E 26773
**AND ADDRESS:**    3343 Metairie Road Suite 6, Metairie, LA 70001

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

| NO: 2019-00739 | DIVISION: G | SECTION: 11 |
|---|---|---|

### GUILLORY, DARRELL

#### Versus

### THE NATIONAL FOOTBALL LEAGUE  ET AL

#### CITATION - LONG ARM

TO:    · VINOVICH, BILL

THROUGH:    THE LOUISIANA LONG ARM STATUTE

    412 FAWN PARK CIRCLE, COUNCIL BLUFFS, IA 51503

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.
**\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\***

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA January 31, 2019**

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by
Barbara Gaude, Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages | First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages |
| ON  VINOVICH, BILL | ON  VINOVICH, BILL |
| THROUGH: **THE LOUISIANA LONG ARM STATUTE** | THROUGH: **THE LOUISIANA LONG ARM STATUTE** |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of |
| _____ No. _____ | _____ a person of suitable age and |
| Deputy Sheriff of _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating |
| Mileage: $ _____ | HIM/HER the said VINOVICH, BILL being absent from the domicile at time of said service. |
| _____ / ENTERED / _____ | Returned the same day |
| PAPER    RETURN | _____ No. _____ |
| _____ / _____ | Deputy Sheriff of _____ |
| SERIAL NO.    DEPUTY    PARISH | |

ATTORNEY'S NAME:    Williams, Lynn E 26773
AND ADDRESS:    3343 Metairie Road Suite 6, Metairie, LA 70001

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO: 2019-00739    DIVISION: G    SECTION: 11

GUILLORY, DARRELL

Versus

THE NATIONAL FOOTBALL LEAGUE ET AL

### CITATION - LONG ARM

TO:    CAVALETTO, GARY

THROUGH:    THE LOUISIANA LONG ARM STATUTE

1100 DEL RAY VIA, GOLETA, CA 93117

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA January 31, 2019

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by
Barbara Gaude, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages | First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages |
| ON CAVALETTO, GARY | ON CAVALETTO, GARY |
| THROUGH: THE LOUISIANA LONG ARM STATUTE | THROUGH: THE LOUISIANA LONG ARM STATUTE |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and |
| _____ No. _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said CAVALETTO, GARY being absent from the domicile at time of said service. |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED / _____ | _____ No. _____ |
| PAPER        RETURN | Deputy Sheriff of _____ |
| _____ / _____ / _____ | |
| SERIAL NO.    DEPUTY    PARISH | |

ATTORNEY'S NAME:    Williams, Lynn E 26773
AND ADDRESS:    3343 Metairie Road Suite 6, Metairie, LA 70001

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO: 2019-00739              DIVISION: G              SECTION: 11

GUILLORY, DARRELL

**Versus**

THE NATIONAL FOOTBALL LEAGUE  ET AL

#### CITATION - LONG ARM

TO:        PRUKOP, TODD

THROUGH:    THE LOUISIANA LONG ARM STATUTE

            45 TEABERRY LANE, RANCHO SANTA MARGARITA, CA 92688

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the
Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30)
days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through
the "Long Arm Statute" under penalty of default.

### ADDITIONAL INFORMATION
Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New
Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast
Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.
********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA January 31, 2019

Clerk's Office, Room 402, Civil Courts          CHELSEY RICHARD NAPOLEON, Clerk of
421 Loyola Avenue                               The Civil District Court
New Orleans, LA                                 for the Parish of Orleans
                                                State of LA
                                                by
                                                Barbara Gaude, Deputy Clerk

---

**SHERIFF'S RETURN**
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages | First Supplemental Amended Class Action Petition for Damages & Original Petition for Damages |
| ON PRUKOP, TODD | ON PRUKOP, TODD |
| THROUGH:  THE LOUISIANA LONG ARM STATUTE | THROUGH:  THE LOUISIANA LONG ARM STATUTE |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of |
| _____ No. _____ | _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose |
| Deputy Sheriff of _____ | name and other facts connected with this service I learned by interrogating |
| Mileage: $ _____ | HIM/HER the said PRUKOP, TODD being absent from the domicile at time of said service. |
| _____ / ENTERED / | Returned the same day |
| PAPER           RETURN | _____ No. _____ |
| _____/_____      _____/_____ | Deputy Sheriff of _____ |
| SERIAL NO.    DEPUTY    PARISH | |